THE KANSAS CITY NORTHWESTERN RAILROAD COMPANY v. CHARLES SCHWAKE.

**No. 13,707.**   (78 Pac. 431.)

SYLLABUS BY THE COURT.

RAILROADS—*Liability to Adjoining Landowners for Excavation of an Alley.*   Where a railroad company appropriates an alley in a city for the purpose of laying its tracks, and makes a deep excavation therein close to the lot line, the damages recoverable by an abutting owner are restricted to the special injury sustained by him by reason of being cut off from access to, and egress from, his property.   A landowner does not suffer damages recoverable at law for injury to lateral support of his property until the earth is so much disturbed that it slides or

Railroad Co. v. Schwake.

falls. The actionable wrong for impairment to lateral support
is not the excavation, but the act of allowing the owner's land
to fall.

Error from Leavenworth district court; JAMES H.
GILLPATRICK, judge. Opinion filed November 5, 1904.
Reversed.

### STATEMENT.

PLAINTIFF below, defendant in error here, is the
owner of six lots in the city of Leavenworth, each
fifty feet in width, facing on Front street and extend-
ing back and abutting on an alley in the rear. Plaintiff
in error laid a railway-track in the alley. Preparatory
thereto it dug a ditch more than twenty feet in width
and from eighteen to twenty feet deep. It is alleged
in the petition that the railroad company "appropri-
ated the said alley for the whole width thereof, and a
part and portion of the west end of the said lots of the
said plaintiff as aforesaid, permanently, to its own ex-
clusive use, and obstructing the same, and ruining
the said alley for public use, and destroying all in-
gress and egress thereto and therefrom, and leaving
such ditch or canal in such shape that the lateral
support to the plaintiff's lots has been wholly removed
and destroyed, and because thereof much of the plain-
tiff's lots along such canal from time to time has
slipped and fallen into the said canal, thereby greatly
and permanently injuring his said property." .

It must be assumed that plaintiff below failed to
prove that the railroad company extended the excava-
tion outside the alley and upon the west end of his
lots, for the reason that the damages allowed by the
jury, indicated by their answers to special questions,
were for loss of use of the alley and for the impairment
of lateral support of the lots. In answer to particular

questions of fact the jury found that they allowed
$25 as damages for the destruction or impairment of
the lateral support of lot No. 1; $75 for lot 2; $125
for lot 3; $150 for lot 4; $175 for lot 5; and $200 for
lot 6.   The jury itemized the damages allowed as
follows :

"For destruction of lateral support of lots Nos. 1, 2,
3, 4, 5, and 6, $750, and for the permanent loss of use
of alley appurtenant to lots 2, 3, 4, 5, and 6, $200."

The following question and answer appear in the
record :

"72.  Ques.  If you find a general verdict for the
plaintiff, state how much, if anything, you allow as
damages because of any portion of lot 1 having slipped
or fallen into the excavation made for such railroad,
prior to the commencement of this action.   Ans. Noth-
ing."

The same response was made to like questions re-
specting each of the other lots.

The jury found specially that the construction of
the railroad interfered with Schwake's usual manner
of ingress to, and egress from, his lots, and that the
use of the alley which he rightfully enjoyed was de-
stroyed.

The general market value of the six lots immediately
prior to the construction of the railroad was found to
be $9000; immediately after, $8050.   The total differ-
ence in value was $950, for which amount the jury re-
turned a verdict against the railroad company.

The following questions were asked, and answers
returned by the jury :

"140.  Ques.  If you find a general verdict for the
plaintiff, state how much, if anything, you allow as
damages for the future cost or expense of construct-
ing a stone wall along the lots in controversy.   Ans.

No ; we made allowance for that in damage in lateral support.''

"160. Q. If you find a general verdict for the plaintiff, then state whether, in arriving at the amount of such verdict, you have considered any loss or damage which plaintiff has sustained or may in the future sustain after the time of the construction of the track in said alley. A. Yes.

"161. Q. If the last above question is answered 'Yes,' then state what such items consist of. A. Taking away the lateral support of the lots and the destruction of the alley and its use.''

Defendant below filed a motion asking the court to set aside so much of the amount of the general verdict as was rendered for deprivation of lateral support of the lots, to wit, $750. It also filed a motion for a new trial. Both motions were overruled and judgment for $950 entered on the verdict.

The instructions to the jury were to the effect that a railroad could not destroy the alley for public use, and that if it was so destroyed the plaintiff might treat the act of the company as a permanent appropriation of the alley, and of his interest therein, and recover as damages the consequent depreciation in the value of the lots ; that, in such case, plaintiff would be entitled to the difference between the market value of his property immediately before the alley was appropriated for railroad purposes and the market value immediately after such appropriation ; that an abutter on an alley in a city has the right of ingress to, and egress from, his property, of which he cannot be deprived by any person or corporation appropriating the alley to his or its own private use. There were no instructions which authorized the jury to consider damages arising from an impairment of lateral support of the lots.

None of the evidence is preserved in the record. The railroad company assigns error in the action of

Railroad Co. v. Schwake.

the court for entering judgment on the findings for
the amount of $750 for destruction of lateral support
of the lots.   It contends that judgment could go
against it for $200 only, the amount allowed by the
jury for the permanent loss of the use of the alley.

*Waggener, Doster & Orr,* for plaintiff in error.
*Baker & Baker,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. :  The case was tried and proceeded to
judgment in the court below on the theory that the
obstruction to the alley was a permanent appropria-
tion of it by the railroad company.   Such appropria-
tion involved the weakening of the lateral support of
the rear end of the lots abutting on the alley by
reason of an excavation to the depth of eighteen
feet, made to accommodate the railroad-track.   Enter-
ing into the verdict, as disclosed by the findings of
the jury, was the element of damages caused by the
impairment to the lateral support of the land afforded
by the soil adjacent thereto which the lots naturally
had before the excavation was made.   An allowance
was made for the future cost of building a stone wall
at the back of the lots.   The jury awarded no dam-
ages because any portion of the lots had slipped or
fallen into the excavation.

It is a general rule, to which we have found no ex-
ception, that a landowner does not suffer damages re-
coverable at law for injury to lateral support of his
property until the earth is so much disturbed that
it slides or falls.   The principle was well stated in
*Schultz v. Bower,* 57 Minn. 493, 496, 59 N. W. 631, 47
Am. St. Rep. 630, 632, thus :

"Where one, by digging in his own land, causes
10—70 KAN.

the adjoining land of another to fall, the actionable wrong is not the excavation, but the act of allowing the other's land to fall.''

A leading case on the subject was decided in the house of lords, in which it was held that the statute of limitations began to run on an action for damages based on impairment of lateral support of land not from the time of excavation but from the actual occurrence of. the mischief, which in that case was the subsidence of the earth by the working of a mine under the plaintiff's land. (*Backhouse v. Bonomi*, 1 B. & S. 970.)   Counsel in the case referred to argued that the plaintiffs were entitled to recover prospective damages for any loss which they could have shown would arise, or might reasonably be expected to arise, from the withdrawal of lateral support.   It was decided otherwise.   The following cases are in point: *Williams v. Kenney*, 14 Barb. 629 ; *Ludlow v. The Hudson River Railroad Co.*, 6 Lans. 128 ; *Smith v. Seattle*, 18 Wash. 484, 51 Pac. 1057, 63 Am. St. Rep. 910 ; *Fremont, E. & M. V. R. Co. v. Harlin*, 50 Neb. 698, 70 N. W. 263, 36 L. R. A. 417, 61 Am. St. Rep. 578. See, also, section 590 of Jones on Easements.

While it was competent for plaintiff below to prove the market value of the lots before and after the appropriation of the alley to show the extent of the injury sustained by him, yet his damages, under the uniform decisions of this court in like cases, must be confined to the diminution in value occasioned by the peculiar and special injury sustained by being cut off from access to, and egress from, the land.   Decrease in market value occasioned by an injury apart from the loss of use of the alley cannot be shown by bringing into the case an element of damage for which no action would lie.   The cases of *L. N. & S. Rly. Co.*

*v. Curtan,* 51 Kan. 432, 33 Pac. 297, and *C. B. U. P. Rld. Co. v. Andrews,* 26 id. 702, cited by counsel for defendant in error, do not sustain their views on the right of the lotowner to recover for injury to lateral support.

Plaintiff in error asks that the judgment of the court below be modified by a direction that the sum allowed for damage to lateral support be eliminated from it. A review of the particular questions of fact submitted to the jury, and their answers thereto, satisfies us that they are so conflicting that no judgment for either party can be sustained. The jury found that the difference in the market value of the lots before and after the appropriation was $950 ; that they had depreciated that much. On this finding judgment must go for plaintiff below, and such finding seems to have followed a proper submission of the case to the jury, for the court did not instruct that damages for injury to lateral support might be recovered, and, in the absence of evidence, we cannot say there was any proof of it. The jury allowed $750 for injury to lateral support. This conflicts with the finding as to market value before and after appropriation, and is at variance with the theory on which the case was seemingly tried, inasmuch as there was nothing in the instructions authorizing a recovery for damage to lateral support, and none of the evidence is before us.

It may be said that the jury, under the theory on which the case was tried, did not and could not consider the damage to lateral support, and did not mean that they had when they answered that the general market value of the lots was $9000 immediately before the appropriation and $8050 immediately afterward. The finding that an allowance of $750 was made for destruction of lateral support is in direct

conflict with the findings respecting market value, when we consider that the findings as to value were made without any evidence before the jury regarding the question.

The judgment of the court below will be reversed and a new trial granted.

JOHNSTON, C. J., CUNNINGHAM, GREENE, JJ., concurring.

MASON, J. (dissenting) : The decision of this case depends upon whether the act of defendant in unlawfully depriving plaintiff's land of its lateral support is to be regarded as a permanent tort—that is, one whose injurious effects will continue indefinitely, or as a wrongful act which is not a tort in itself because not productive of an injury, but which creates a condition every moment's continuance of which is a new wrong and, if accompanied by any injury, is a new tort.   (Sedg. Dam. §§ 91–95, 925.)   In the former case action may be brought at once to recover for all damage, present and prospective ; in the latter case, under the authorities, no action can be brought until there is an actual disturbance of the soil of plaintiff's land, the recovery being limited to the injury produced by such disturbance, and successive actions may be brought whenever new disturbances occur.

The doctrine that action for the deprivation of lateral, or subjacent, support cannot be brought until there is an actual slipping or subsidence of plaintiff's land is of modern origin.   It was first declared in 1861, in *Backhouse v. Bonomi*, 9 H. L. Cas. 503, 1 B. & S. 970 (cited in the foregoing opinion), which practically overruled *Nicklin v. Williams*, 10 Exch. 259.  It may be said to have been finally established in England in *Mitchell v. Darley Main Colliery Co.*, 14

Railroad Co. v. Schwake.

Q. B. D. 125 (1884), affirmed by the house of lords on appeal, 11 App. Cas. 127 (1886), where all the earlier cases were exhaustively reviewed, one being expressly overruled.

In the first-named case the defendant, in the course of mining operations, made a subterranean excavation which some years later caused a subsidence of plaintiff's land.  Plaintiff knew nothing of the excavation until the subsidence.  When he brought suit the period of limitation had run, if computed from the time of the excavation, but not if computed from the time of the subsidence.  The question was whether action was barred by limitation.  It was held, in order to save plaintiff from the bar of the statute, that his cause of action did not accrue until the subsidence took place.  This conclusion was approved in the last-named case, where it was decided as a necessary consequence that under similar conditions each successive subsidence gave rise to a new cause of action, in which damages could be recovered for additional injuries suffered up to the time of its commencement. The opinions of the various judges participating in the decision disclose that the conclusion was controlled by considerations of practical expediency, and was justified upon the theory that the wrong done by the defendant consisted not in the mere making of the excavation but in the failure to repair it.  It was argued that it would be difficult or impossible to determine whether a subterranean excavation would ever produce a surface effect, and if so, to what extent, and that to hold defendant liable for all future damage that would naturally result from this act would be unjustly to cut him off from the right to reduce his liability by filling up the excavation, or otherwise

providing suitable support for the plaintiff's property. Brett, M. R., said :

"In 1868, or immediately afterward, they [defendants] did something which did give him [plaintiff] a cause of action ; that is, they caused his land to subside, and that subsidence caused by them was his cause of action ; they caused that subsidence by mining, and by not propping so as to prevent the plaintiff's land subsiding afterwards.    That cause of action was settled between them when they repaired his houses ; but now they have done him a new and wholly independent injury ; they have caused his land to subside again.    It is true that in this case it is at the same spot as before, but it might have been a hundred yards off ; it is a new subsidence.    They have caused that subsidence by the excavation of the minerals in 1868, and by not having filled up that excavation before 1882.   .   .   .    It may be argued that the *causa causans* is not the same.    The *causa causans* of the first is the excavation ; the *causa causans* of the second is, as a matter of fact, the excavation unremedied, or the combination of the excavation and of its remaining unremedied."    (14 Q. B. D. 129, 134.)

Lord Fitzgerald said ·

"There was a complete cause of action in 1868, in respect of which compensation was given, but there was a liability to further disturbance.    The defendants permitted the state of things to continue without taking any steps to prevent the occurrence of any future injury.    A fresh subsidence took place, causing a new and further disturbance of the plaintiff's enjoyment, which gave him a new and distinct cause of action.    If this view is correct, then it follows that the cause of action now insisted on by the plaintiff is not the same cause of action as that of 1868, but is in point of law, as it is physically, a new and independent cause of action arising in 1882, and to which the defense of the statute of limitations is not applicable." (11 App. Cas. 151.)

Railroad Co. v. Schwake.

Bowen, L. J., said :

"It seems to me that there has really been, not merely an original excavation or act done, but a continual withdrawal of support ; that is to say, not merely an original act the results of which remain, but a state of things continued, and a state of things continued which has led to and caused the subsequent damage. It seems to me that as long as the defendant continued that state of things and damage arose from it, it is only right to treat the state of things as running from the time the damage was caused, because it is impossible to join the damages exclusively to the original act of excavation, and to dissever or disjoin them from the continuance of the state of things that was harmful or hurtful.   In order to make that good, I should like to refer shortly to what Cockburn, C. J., says, that the inconvenience of holding the opposite is enormous, because, if the original act of excavation is treated as that with which the subsequent damage is to be connected, a man will not be at liberty to correct his original misfeasance if he chooses ; and if the damages are to be recovered once for all, an injustice will be done, because a man may be compelled to pay for consequences which it is possible for him at any moment to obviate."   (14 Q. B. D. 138.)

Under the authorities referred to the plaintiff in this case might have waited until there had been some slight disturbance of the soil of his land ; might then have sued for the specific damage so arising ; upon the occurrence of a further disturbance he might have instituted a second suit for additional damages, and he might continue to bring a new suit upon each fresh disturbance, so long as the defendant should suffer the excavation it had made to remain, upon the principle that the failure to repair the wrong is an essential part of each successive cause of action.   But this is not inconsistent with the right of the plaintiff to maintain the present action.   If it be assumed, as it

fairly may, that defendant has disavowed all purpose to repair its wrong, and intends to make permanent the condition it has created, then it has no standing to object to the demand of the plaintiff for the recovery in one action for all the damage to be sustained by him as the natural result of such permanent condition. As was said in *C. B. U. P. Rld. Co. v. Andrews*, 26 Kan. 702, 710 :

"The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots, as a *quasi*-condemnation and permanent taking and appropriation of a certain interest in his property ; and he can therefore recover merely for the consequent depreciation in value of his property by reason of such permanent injury, by reason of such permanent taking and appropriation, by reason of such *quasi*-condemnation. He had the privilege to consider the obstruction of the alley as only a temporary injury, and to have sued for any special or temporary damage which might have occurred at any time by reason of the obstruction."

And in the syllabus to *W. & W. Rld. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362, it was said :

"Where a railroad company enters upon land and constructs its road without the consent of the landowner, and without making compensation for the land taken and injured, the owner may pursue any one of the several appropriate remedies, and may, where the road is in its nature, design and use, of a permanent character, elect to bring an action for a permanent appropriation and injury."

The doctrine that a cause of action based upon the removal of lateral support does not arise until there has been a slipping or falling of plaintiff's land is justified only by reasoning that the act complained of is of such character that it may or may not prove injurious in fact; that until the soil has slipped or

Railroad Co. v. Schwake.

fallen there is no actual injury ; and since, until that
time, there is always a chance that the excavation may
be repaired before any sliding or falling takes place,
it may happen that no such injury will ever result.
But when it is conceded that the excavation will never
be repaired the uncertainty vanishes, and there re-
mains no reason why the plaintiff should not be per-
mitted to sue at once to recover for any damage that
he may be able to prove will necessarily result from
the perpetuation of the changed condition.

Considering as permanent the changed condition
with regard to lateral support created by the act of
defendant, from the moment it was established, the
plaintiff's property may have been by reason of it and
its inevitable consequences worth something less than
before.   It may have been less valuable for use.   It
may have commanded a less price upon the market.
To deny this is to declare that to be false, as a legal
proposition, which common sense recognizes to be
true as a matter of fact.   Whether in this aspect of
the matter the property was rendered less valuable
was a question of fact to be determined under the evi-
dence.   In the absence of the testimony it cannot be
said as a matter of law that this could not have been
the case.   Our constitution and statutes secure to the
plaintiff compensation for any loss through such im-
pairment of value, measured by the difference between
the value of the land immediately before and im-
mediately after the creation of the new condition.
He should not be denied relief because of a rule the
reason for which confines its application to cases where
he who has done the wrong may seek to repair it.

In *M'Cullough v. St. Paul, M. & M. Ry. Co.*, 52 Minn.
12, 53 N. W. 802, it was said that to justify a railroad
company in the removal of the lateral support to the

soil of an adjacent owner it must show a right to do so,
acquired either by purchase or condemnation.   In the
discussion it was fully recognized that such right may
be the subject of appropriation by eminent domain.
If the defendant in the present case had sought to
acquire by condemnation the right to deprive plaintiff's
land of its lateral support, no difficulty would have
been occasioned by the rule that it is the disturbance
of a neighbor's soil, and not the mere removal of its
support, that gives rise to a cause of action.   Com-
pensation would have been assessed once for all for
all damage, present and future.    (10 A. & E. Encycl.
of L., 2d ed., 1173.)   The same method should pre-
vail here, where the right may be considered as ap-
propriated by *quasi*-condemnation.

I am authorized to say that Mr. Justice BURCH joins
in this dissent.

ATKINSON, J. (dissenting) : I concur in the law de-
clared in the syllabus and the corresponding portion of
the opinion, but dissent from the judgment of reversal.
The law as declared limits plaintiff's recovery to the
damage he sustained in being deprived of access to,
and egress from, his lots, and precludes a recovery for
impairment to lateral support until the disturbance of
the soil causes it to slip or slide.   Until then he has
sustained no actionable damage.   In this I concur.
And I maintain that it is not for the adjoining lot-
owner to question whether the excavation was rightful
or wrongful, so long as there has been no trespassing
upon his premises.   Whether rightful or wrongful, he
suffers no actionable damage until there has been a
slipping or sliding of his soil into the excavation.

The case is in this court for review on the findings of
the jury.   To my mind, the finding of the jury, that

Railroad Co. v. Schwake.

plaintiff's damage by reason of being cut off from ac-
cess to, and egress from, his premises on account of
defendant's excavation in the alley was $200, should
control.   The judgment of the district court should
be modified, and judgment for plaintiff ordered in the
sum of $200.   The judgment is reversed and a new
trial ordered principally because, as stated in the
opinion, the jury also found the difference in the value
of the premises immediately before, and immediately
after, the excavation to be $950.   These two findings,
in the opinion of the court, are inconsistent.   In the
opinion it is recognized that the question of damage to
lateral support was not properly before the jury as an
element of plaintiff's recovery.   It is also recognized
and stated that "decrease in market value, occasioned
by an injury apart from the loss of use of the alley,
cannot be shown by bringing into the case an element
of damage for which no action would lie."

The jury found there had been no slipping or fall-
ing of the earth from plaintiff's lots into the excava-
tion, and then found $750 as plaintiff's damages for
loss of lateral support of the lots.   Since, under the
law, this item of damage was not an element to be
taken into consideration, as there had been no action-
able damage to the lateral support, and since the
question was not properly before the jury, this finding
of damages should receive no consideration.   The
elimination of this element of damage from considera-
tion will deduct $750 from $950, the amount found by
the jury to be the difference in the market value of
the premises immediately before and immediately after
the excavation of the alley, and will leave $200, the
amount the jury found plaintiff had been damaged in
being cut off from the use of the alley.   So, also, this
finding of $750 deducted from the verdict of $950 will

leave $200, the amount the jury found as plaintiff's damage for being cut off from the use of the alley. There is thus shown to be consistency in the findings of the jury.

As has been observed, to eliminate any apparent inconsistency in the findings of the jury it is only necessary to eliminate from consideration the finding of damages for injury to lateral support, an element recognized as not having been properly submitted to the jury. This finding of $200 for injury to plaintiff from being cut off from the use of the alley is the jury's measure of damages on the only element of damage properly submitted. This finding of the jury should stand, and should constitute the basis of plaintiff's judgment.

SYLLABUS BY THE COURT.