No. 20,513.

JOHN AUDO, *Appellee,* v. THE WESTERN COAL & MINING
COMPANY, *Appellant.*

No. 20,514.

BARNEY NAPUTE, *Appellee,* v. THE WESTERN COAL & MINING
COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WARRANTY DEED—*Reservation of Underlying Coal—Subsidence of
   Surface—Damages—Cause of Action.* A mining company mined the
   coal from part of the land owned by it, and then conveyed the land,
   reserving all the underlying coal and other minerals. Nothing was
   said in the deed about subjacent support. The purchaser knew that
   the coal had been mined from part of the land, but had no personal
   knowledge of the manner in which the mine had been worked. A
   portion of the surface over that part of the land from which the coal
   had been mined previous to the making of the deed, subsided after
   the land had been conveyed. *Held,* that the purchaser has a cause of
   action against the mining company for the damage caused by the
   subsidence of the surface.

2. SAME—*When Statute of Limitations Begins to Run.* Such a cause of
   action does not accrue until the subsidence of the land occurs, and
   the statute of limitations does not begin to run until that time.

3. WARRANTY DEED—*Option to Repurchase—Improvements by Purchaser
   —Specific Performance.* Where a conveyance, such as is mentioned
   in section 1 of this syllabus, contains an option to repurchase the
   land at the average price per acre paid by the purchaser, a judgment
   denying specific performance of such option will not be reversed where
   ten years have elapsed since the execution of the deed, and where the
   purchaser has made extensive improvements on the land, greatly
   enhancing its value, and no offer is made to pay for such improvements.

Appeals from Crawford district court; ANDREW J. CURRAN,
judge.   Opinion filed January 6, 1917.   Both affirmed.

*W. P. Waggener, A. E. Crane,* both of Atchison, and *J. J.
Campbell,* of Pittsburg, for the appellant.

*Arthur Fuller,* and *W. J. True,* both of Pittsburg, ·for the
appellees.

The opinion of the court was delivered by

MARSHALL, J.: These actions are submitted together because both depend on the same state of facts and involve the same questions of law. This opinion is written in No. 20,514.

The plaintiff obtained judgment for one thousand dollars for damages caused by the subsidence of land into excavations made by mining coal. The defendant appeals.

The case was tried largely on an agreed statement of facts, as follows:

"It is agreed that on the 16th day of February, 1904, said defendant made, executed and delivered a deed to this plaintiff, Barney Napute, Paul Omelia and Joe Audo for the Southeast quarter (S. E. ¼) of Section ten (10), Township thirty-one (31), Range twenty-four (24), containing one hundred sixty (160) acres for the consideration of four thousand ($4000.00) dollars, and in said deed, said defendant reserved the mineral right with other reservations, a true and correct copy of said deed being attached to this stipulation and made a part hereof.

"It is agreed that soon after said conveyance the title to said property passed to this plaintiff, Barney Napute and Joe Audo and was divided in equal parts between said parties, and that this plaintiff, Barney Napute, became the sole owner of fifty-three (53) acres extending north and south in the center of said quarter section and a tract of twenty-seven (27) acres of land in the northwest corner of said quarter section, and that the said plaintiff, Barney Napute, was the owner of that portion of said land for more than two years prior to the filing of this cause.

"It is agreed that the original purchase price of said lands was twenty-five ($25.00) dollars per acre, and that said amount was paid for the surface only and was less than the market price of other lands in said vicinity which had not been divided into a surface estate and mineral estate. And it is further agreed that the mineral rights and reservations retained by the said defendant in said premises was of the value of eighty dollars per acre prior to the time the coal was mined and removed therefrom.

"It is agreed that the plaintiff, at the time of the purchase of said lands in question of the defendant, had been in the past a practical coal miner and knew that he was buying farm land from under a portion of which the coal had been removed and from the remainder the coal would probably be removed.

"It is agreed that all the sink-holes and depressions which have developed upon the lands since the purchase thereof by the plaintiff is in that portion of the land from which the coal had been removed at the time the conveyance was made.

"It is agreed that the defendant, at the time said cause was called for trial, tendered to the plaintiff a certified check for two thousand ($2000.00) dollars, the same being a sum equal to the purchase price of

eighty (80) acres owned by plaintiff, and demanded a reconveyance of the land held by the plaintiff, free and clear of any liens or incumbrances thereon, which demand for reconveyance was refused by the plaintiff unless said defendant would pay for the improvements made by plaintiff on said premises; and the plaintiff made the proposition in open court, that he would accept the two thousand ($2000.00) dollars, the original purchase price, provided said defendant would pay the actual value of the improvements made by plaintiff upon said premises, and proposed that plaintiff appoint one appraiser, and defendant appoint one appraiser and a third appraiser to be appointed by the court, which Board of Appraisers to ascertain the value of the improvements now on said land, and defendant to compensate the plaintiff for such improvements at the appraisers' valuation in addition to the original purchase price of said land, and that said counter-proposition, the defendant declined.

"It is agreed by the parties hereto that the coal mined and removed by the defendant under the premises owned by the plaintiff, was mined under the room and pillar system and that the plaintiff had never worked in said mine and has no personal knowledge as to the manner in which said mine was worked.

"It is further agreed that all of the coal has not been removed from the land in controversy and that the said defendant is now engaged in mining coal under a portion of the said land but such portions have developed no sinkholes or depressions of any kind or character.

"It is agreed that the total area of all sinkholes and depressions which have appeared on the surface of said plaintiff's land is sixty-eight hundredths (.68) of an acre.

"It is agreed that the amount of dirt required to fill said sinkholes in which filling would be necessary or desirable is fifteen hundred and eight (1508) cubic yards.

"It is agreed by the parties hereto that the said premises were purchased by the plaintiff for farming purposes and that the land so conveyed by the defendant to the plaintiff is suitable for general farming purposes."

Other evidence established that the defendant owned this land and had mined the coal from part of it prior to the time that the deed was made to Napute, Onelia, and Audo. That deed contained the following reservations:

"The grantor herein expressly reserves to itself, its successors and assigns, all the coal and other minerals underlying the land hereby conveyed and the right to use at its pleasure so much of the surface of said land as may be necessary for properly working, mining and removing said coal and other minerals, including such rights of way, above and below the surface of said land, for railroad tracks, switches, and roadways, as the grantor herein may deem necessary for the purpose of mining and removing the coal and other minerals from said land, or any other land on which mining operations are now or may hereafter be carried on by the party of the first part, its successors or assigns, it

being the purpose of this reservation to secure to said grantor, its successors and assigns, not only the right to lay, maintain and operate the necessary tracks and roadways for the removal of the coal and other minerals mined on the land herein conveyed but also to lay, maintain and operate such tracks and roadways as may be necessary for removing coal and other mineral from and transporting material to any mines, that it or its successors or assigns, may operate on any other land. The reservation of mining rights, coal and other minerals herein reserved shall continue, until all the coal and other minerals on the land herein described shall be exhausted, after which time said grantor shall own said premises in fee simple, subject to the rights of way reserved by the grantor, and subject to the further right of the grantor at all times to lay, maintain and operate the necessary tracks for hauling coal and other minerals mined from this or other lands as aforesaid.

"The grantor herein further expressly reserves to itself the right to repurchase from the party of the second part, all or any portion of the premises conveyed by this deed, for the average price per acre paid by the said party of the second part to said grantor."

Under the option to repurchase contained in the deed, the defendant, in a cross-petition contained in its answer, elected to repurchase the land owned by the plaintiff at the average price per acre paid to the defendant for the land, and asked that the plaintiff be compelled to reconvey the land to the defendant on the payment of that sum. The cross-petition was stricken out on the application of the plaintiff.

The defendant argues three propositions: First: That the plaintiff has no cause of action. Second: That the plaintiff's action, if he had a cause of action, was barred by the statute of limitations at the time this action was commenced. Third: That the court erred in striking out the defendant's cross petition and in refusing to decree specific performance of the option contained in the deed.

1. Has the plaintiff a cause of action against the defendant? In answering this question three things will be considered: first, the deed given by the defendant; second, the mined condition of the land at the time that deed was given; and third, the price paid for the land.

The deed was a general warranty deed, except for the reservations it contained. On its face it described and conveyed the real property and everything connected therewith, and all "rights, privileges, appurtenances and improvements thereto belonging, or in any wise appertaining." Where real property has been separated so that one person owns the sur-

face and another owns a substratum, or the minerals under the surface, the person that owns the surface has an absolute right to subjacent support unless that right has been distinctly waived.

In *Walsh v. Fuel Co.*, 91 Kan. 310, 137 Pac. 941, this court said:

"That the right to subjacent support to the surface will not be deemed to have been waived, conveyed by or lost to the owner of the surface unless such clearly appears, from the language used in the conveyance, to have been the intention of the parties is sustained by numerous authorities, among which are the following cases: [Citing a number of cases.]

"The contract in this case is not ambiguous in the usual sense. The only question is the legal effect of the language used therein, and, as we have seen, it does not clearly appear that the right to subjacent support of the surface was intended to be waived or conveyed by appellant." (p. 313.)

The syllabus to *Lowry v. Hay*, 2 Walk. (Pa. Supr. Ct.) 239, is as follows:

"The owner of the surface is entitled to actual absolute support, unless that obligation is distinctly waived."

In section 209 of Reeves on Real Property the author says:

"Where different *strata* of earth or soil, one beneath the other, are owned by different persons, and there is no contract nor statute which affects their interests, the owner of the upper *stratum* has an absolute right to have his land supported in its natural condition by the *stratum* below."

Part of section 122 of volume 1 of Minor on Real Property reads:

"The right of *support*, wherever it exists, whether by *natural right* or by *agreement*, supposes an absolute obligation upon the servient owner, *regardless of any negligence* on his part in making the excavations or improvements."

"There is a right of subjacent support, though this is not by grant but is a right of property passing with the soil, as otherwise the surface can not be enjoyed at all." (5 M. A. L. 364.)

Volume 1 of Tiffany on Real Property, at page 690, says:

"But the presumption is that the right to subjacent support exists, and clear evidence is necessary to support a claim to the contrary."

Other authorities are: 3 Lindley on Mines, 3d ed., §§ 818, 819; *Williams v. Hay*, 120 Pa. St. 485; *Burgner v. Humphrey*,

41 Ohio St. 340; Notes, 2 L. A. R., n. s., 1115, 1117, and 41 L. R. A., n. s, 236, 243.

Subjacent support is a part of the realty, the same as the surface soil, the subsoil, the water, the rocks, and the minerals under the surface, and the air and light above. Real property can not exist without that support.

The deed from the defendant conveyed everything that the defendant could convey, except what was specifically reserved. The right to take from the surface subjacent support was not reserved. On its face, the deed conveyed subjacent support for the reason that such support was a part of the real property therein described.

It is argued that because the coal had, before the deed was made, been mined from that part of the land which afterward caved in, no cause of action exists in favor of the plaintiff. When that coal was mined the defendant owned the surface, the coal, and all the substrata, and had a right to take away from the surface all subjacent support. When the defendant sold this land to the plaintiff the surface was standing in its natural position, supported in some way by what was below. The plaintiff knew that some of the coal had been mined from the land, but he had no personal knowledge of the manner in which the mine had been worked. There was no evidence to show that he knew that the mine had been left in such a condition that there would be a subsidence of the surface. There was nothing to indicate that support for the strata above the coal had been withdrawn. The plaintiff had the right to assume that such support had been left. Under these circumstances the plaintiff's knowledge of the fact that the coal had been taken from a portion of this land did not constitute a waiver of the right to subjacent support conveyed by the deed.

It may be said that the amount paid for the land, when compared with the price for which adjoining land was selling, indicated that the plaintiff took this property and assumed the risk of the surface subsiding. It does not appear that twenty-five dollars an acre was not a fair price for this land for agricultural purposes. That price was compared with the price of other lands which had not been divided into a surface estate and a mineral estate. In other words, this land was compared with other land that included both the surface and the under-

lying coal. Without the surface the coal under the other land was worth eighty dollars an acre. What the surface of the other land was worth, without the coal, was not shown. For this reason no argument whatever can be based on the price paid by the plaintiff for the land.

It necessarily follows that the plaintiff had a cause of action against the defendant.

2. Was the plaintiff's action, at the time it was commenced, barred by the statute of limitations? The coal was taken from the land prior to the execution of the deed. The deed was filed for record March 14, 1904. The petition in this action was filed January 20, 1915. The cave-ins occurred within two years prior to the time this action was commenced. If the plaintiff had been the owner of the surface, and the cause of action had accrued at the time the coal was taken from under the land that subsided, this action would have been barred by the statute of limitations. If the cause of action did not accrue until the land subsided the action was not barred by the statute of limitations.

Until the land subsided the plaintiff sustained no damage and had no cause of action. In *Railroad Co. v. Schwake*, 70 Kan. 141, 78 Pac. 431, this court said:

"Where a railroad company appropriates an alley in a city for the purpose of laying its tracks, and makes a deep excavation therein close to the lot line, the damages recoverable by an abutting owner are restricted to the special injury sustained by him by reason of being cut off from access to, and egress from, his property. A landowner does not suffer damages recoverable at law for injury to lateral support of his property until the earth is so much disturbed that it slides or falls. The actionable wrong for impairment to lateral support is not the excavation, but the act of allowing the owner's land to fall." (Syl.)

In Note, 23 L. R. A., n. s., 805, this language is found:

"So far as the cases are concerned which deal with applicability of the statute of limitations to actions for injury to the surface caused by mining operations or other excavations, the great weight of authority is to the effect that a cause of action does not arise until some actual mischief has been done, from which time the statute of limitations begins to run, regardless of when the mining or other excavating was done."

The plaintiff's cause of action did not accrue until the land subsided; and it follows that at the time this action was commenced it was not barred by the statute of limitations.

3. The defendant insists that the court erred in sustaining the plaintiff's objection to the defendant's cross-petition. The date of the deed and the time of commencing this action have been stated. More than ten years elapsed between the excution of the deed and the commencement of this action. The deed fixed no time within which this option to repurchase by the defendant was to be exercised. Under these circumstances that option should have been exercised within a reasonable time. (*Beck v. Blue,* 42 Ala. 32; *Hopkins v. Lewis,* 18 Cal. App. 107; *Heydrick v. Dickey,* 154 Ky. 475; *Lawson v. Mullinix,* 104 Md. 156; *Williams v. Hart,* 116 Mass. 513; *Pickering. v. Pickering,* 38 N. H. 400; *Campbell v. Bartlett,* 122 Tenn. 208; 36 Cyc. 724.)

The evidence showed that the plaintiff had placed improvements on the land to the value of four thousand dollars. Since the making of the deed, the defendant has been mining the coal from this land, and must have known that the plaintiff was putting improvements thereon. No offer was made to pay for the improvements. In the face of all these circumstances it was not equitable that the defendant should have specific performance of the option contained in the deed. In *Fowler v. Marshall,* 29 Kan. 665, this court said:

"Upon breach of a contract for the sale of real estate, it is not a matter of course for the court to enter a decree of specific performance. That will be done only when, upon all the facts, it is equitable it should be done.

"He who asks specific performance should show the facts which make such a decree equitable; and a failure to do this justifies a refusal of the degree." (Syl. ¶¶ 1, 2.)

(See, also, *Bird v. Logan,* 35 Kan. 228, 10 Pac. 564; *Reid v. Mix,* 63 Kan. 745, 752, 66 Pac. 1021; *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202; *Thompson v. Musick,* 85 Kan. 399, 400, 116 Pac. 612; *Johnson v. Town Co.,* 7 Kan. App. 134, 140, 53 Pac. 87.)

The court struck out the defendant's cross-petition asking for specific performance, but the real question presented is the refusal of the court to decree specific performance of the option to repurchase contained in the deed. It can not be said that the trial court abused its discretion in striking out the cross-petition and in refusing to decree specific performance.

Each of the judgments is affirmed.