No. 46,678

OWEN SANDERS, JR. and KARAN K. SANDERS, *Appellants*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellee*, and CITY OF KANSAS CITY, KANSAS, a municipal corporation, and J. A. TOBIN CONSTRUCTION COMPANY, *Defendants*.

J. L. BLANKENSHIP and HONEY BLANKENSHIP, *Appellants*, v. THE STATE OF KANSAS HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellee*, and CITY OF KANSAS CITY, KANSAS, a municipal corporation, and J. A. TOBIN CONSTRUCTION COMPANY, *Defendants*.

(508 P. 2d 981)

Opinion filed April 7, 1973.

*Frederick K. Cross,* of Kansas City, argued the cause and was on the brief for the appellants.

*Elmer Hoge,* of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This consolidated appeal is from summary judgments entered in favor of the State Highway Commission of the State of Kansas (state highway commission) in actions brought by homeowners (plaintiffs) whose properties adjoin the right-of-way of Interstate Highway I-635 in Kansas City, Kansas.

On the morning of June 28, 1969, these homeowners looked out of the windows of their respective homes and discovered to their surprise that large portions of their back yards had disappeared. Excavation work had been progressing on the adjacent right-of-way of Highway I-635. Plaintiffs' properties are on higher ground and there is a steep incline from the east line of the right-of-way to the roadbed of the highway. Where plaintiffs' back yards had been the soil had crumbled and slid away onto the right-of-way leaving a large hole or crevice 45 feet long, 35 feet wide and 20 to 25 feet deep. The edge of the hole was within two or three feet of the rear sidewalks which lie parallel and along the foundations of plaintiffs' houses. The houses remained intact but sewer and water lines in the back yards were twisted and broken.

Plaintiffs' amended petitions were prepared in two counts, the first count was on the theory of damages arising from tort and nuisance and the second count was on the theory of inverse con-

demnation by reason of removal of lateral support. After issues were joined and interrogatories were answered the trial court sustained motions for summary judgment in favor of the state highway commission on all counts. The court determined that no causes of action were stated in Count I of the petitions because the state highway commission was protected from suits in tort and nuisance by governmental immunity. The court further determined no causes of action were stated in Count II of the petitions because it was not alleged the state highway commission appropriated plaintiffs' properties by taking possession or control over them and any damage accruing was consequential under the rule stated in *Sester v. Belvue Drainage District,* 162 Kan. 1, 173 P. 2d 619.

The landowner-plaintiffs have duly perfected this appeal. They seek to sustain Count I of their petitions by contending the tort and nuisance created was of a continuing nature which extended between August 30, 1969, the date set for abolition of governmental immunity in *Carroll v. Kittle,* 203 Kan. 841, 457 P. 2d 21, and March 26, 1970, which was the effective date of the statute which reaffirmed the state's governmental immunity (K. S. A. 1972 Supp. 46-901 *et seq.*). We do not agree with plaintiffs on this contention.

In the first place our holding in *Carroll* was based on differences recognized in the liability of the state and its agencies while engaged in "proprietary functions" as distinguished from "governmental functions". In *Carroll* the negligence charged was against employees of the Kansas University Medical Center. We held the medical center was engaged in a "proprietary function" and it was on this we based our decision as to liability. Sovereign immunity from tort while engaged in "governmental functions" was not considered by this court in *Carroll.* The following cases since the *Carroll* case indicate that sovereign immunity from tort and nuisance lives on in this state with respect to governmental functions: *Smith v. Board of Education,* 204 Kan. 580, 464 P. 2d 571; *Woods v. Kansas Turnpike Authority,* 205 Kan. 770, 472 P. 2d 219; *Daniels v. Kansas Highway Patrol,* 206 Kan. 710, 713, 482 P. 2d 46; and *Allen v. City of Ogden,* 210 Kan. 136, 499 P. 2d 527.

The state highway commission is acting in a governmental capacity when it is engaged in the establishment, construction and maintenance of the state highway system. (See Article 11, Section 9 of the Constitution of the State of Kansas and K. S. A. 68-406 *et seq.*) Any short-lived removal of sovereign immunity from tort while

engaged in proprietary functions as declared in *Carroll* is not helpful to plaintiffs' claims in Count I of their petitions.

In the second place plaintiffs' actions, when based on tort and negligence, accrued in June, 1969, when the damage occurred. (See *Railroad Co. v. Schwake*, 70 Kan. 141, 78 Pac. 431, 68 L. R. A. 673.) In *Carroll v. Kittle*, supra, this court expressly stated:

"Except for the instant case, the effective date of the abolition of the rule of governmental immunity as applied to proprietary enterprises shall be August 30, 1969. Except for the instant case the new rule shall not apply to torts occurring prior to August 30, 1969. . . ." (203 Kan. p. 851.)

The plaintiffs' claims for tort and negligence accrued two months prior to the effective date of the short-lived rule in *Carroll* and are governed by the law of prior cases.

In the prior case of *American Mut. Liability Ins. Co. v. State Highway Comm.*, 146 Kan. 239, 69 P. 2d 1091, this court said:

"It is a fundamental principal, well settled in the law of this state and generally elsewhere, that the state is regarded as a sovereign governmental body and as such cannot be sued in its own courts by individuals or private corporations, except to the extent it has given its consent thereto. In this state such consent must be given by an act of the legislature. It is also well settled that since the right of action by an individual or private corporation against the state may be granted or withheld at the pleasure of the state, acting through its legislature, such permission may be granted with respect to certain causes of action only, and with respect to certain claimants only, and also may provide conditions precedent to the bringing of such an action and the limitation of time in which they must be brought. . . ." (p. 243.)

In *Gresty v. Darby*, 146 Kan. 63, 68 P. 2d 649, this court said:

". . . An action against the state highway commission is an action against the state. The state can be sued only by its consent. It has given its consent to be sued in an action against the state highway commission upon some causes of action, but not for all causes of action. . . ." (p. 66.)

In *Phillips v. State Highway Comm.*, 148 Kan. 702, 84 P. 2d 927, this court said:

". . . [W]e direct our attention at once to the rule of law which governs cases where damages are sought against a governmental agency. That rule is that neither the state nor any of its subdivisions, nor any of its official boards, is liable in damages except where the legislature has expressly so declared. [Citations omitted]" (p. 704.)

Consent has been given and immunity has been waived in certain types of actions such as suits on express contracts (*Kiewit & Sons' Co. v. State Highway Comm.*, 184 Kan. 737, 339 P. 2d 267); suits in inverse condemnation (*Dugger v. State Highway Commission*,

185 Kan. 317, 342 P. 2d 186; *Atchison v. State Highway Comm.,* 161 Kan. 661, 171 P. 2d 287; *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934); and suits allowed under the so-called defective highway statute (K. S. A. 68-419) which creates a purely statutory liability on the part of the state highway commission (*Lungstrum v. State Highway Commission,* 177 Kan. 57, 276 P. 2d 346; *Shields v. State Highway Commission,* 178 Kan. 342, 286 P. 2d 173; *Kelley v. Broce Construction Co., Inc.,* 205 Kan. 133, 468 P. 2d 160); but immunity has not been waived as to common law actions in tort such as negligence or nuisance.

Therefore the summary judgments entered by the trial court in favor of the state highway commission on Count I, the tort and nuisance claims, were proper.

As to the summary judgments entered on Count II of the petitions, the inverse condemnation claims, plaintiffs contend the trial court erred because the judgments were based upon the erroneous premise that the taking of the right to lateral support amounts only to consequential damage under the rule stated in *Sester v. Belvue Drainage District,* supra.

Inverse condemnation actions have long been recognized in Kansas. When land or rights therein are appropriated by a public corporation having rights of eminent domain without first procuring title the owner may waive formal condemnation proceedings and other formal modes of acquisition and sue to recover compensation. The owner may recover all damages which he has sustained by reason of the permanent taking and appropriation of his property. (*Cohen v. St. L., Ft. S. & W. Rld. Co.,* 34 Kan. 158, 8 Pac. 138.) In *State Highway Comm. v. Puskarich,* 148 Kan. 388, 83 P. 2d 132, it was said:

"The nature of a cause of action, whether based on tort or implied contract, is to be determined from the allegations of the petition. In case of doubt the words appropriate to an action in tort will be disregarded, and the action will be construed as one on quasi contract." (Syl. ¶ 2.)

This rule of liberal construction should be applied to plaintiffs' claims in the present case. (*Price, Administrator v. Holmes,* 198 Kan. 100, Syl. ¶ 1, 422 P. 2d 976.)

In Count II of plaintiffs' present petitions they alleged:

"2. That the allegations in Count I, in addition to stating an action in tort for the negligence of the defendants, and each of them, also constitute an act of taking such that there has been inverse condemnation upon the property of the plaintiffs.

"3. That as a result of the taking which was unauthorized and unlawful the plaintiffs have sustained loss both to their existing property and also to the remainder, similar to the damages which they have alleged in Count I of their petition."

The type of actions recognized in the *Cohen* and *Puskarich* cases have come to be commonly referred to as inverse condemnation actions. In *Atchison v. State Highway Comm.,* supra, it was held:

"Where the state highway commission, which has the power of eminent domain, appropriates the land of any person for state highway purposes without having first acquired the title thereto by formal condemnation or otherwise, the commission is under an implied contractual obligation to pay to the owner the reasonable value of the land it took without condemnation.

"The legislature has given its consent that the state highway commission may be sued on contracts made by the commission in relation to performing its powers, duties and responsibilities under the statutes of this state." (Syl. ¶¶ 2 and 3.)

The right to maintain such an action has been recognized as recently as 1969. (See *Lux v. City of Topeka,* 204 Kan. 179, 460 P. 2d 541.) When lands or rights therein are taken and used in the construction or maintenance of the state highway system this is within the power and authority of the commission under the statute creating it, and the taking or use creates a contract the commission was authorized to make and in respect to which the legislature has given its consent that the commission may be sued. In *Atchison v. State Highway Comm.,* supra, this is expressed as follows:

"It appears from what has been said that if plaintiff and those in whose behalf she acts were the owners of lands subject to condemnation for highway purposes, and such lands were taken by the commission and used by it in a state highway improvement without formal condemnation proceedings being had by the commission, nevertheless the commission is under an implied contractual obligation to pay to the owners the reasonable value of any lands so taken without condemnation; that the taking of such lands and their use in the improvement of the state highway system were a part of the power and duty of the commission under the statute creating it, and that the taking and use created a contract the commission was authorized to make and in respect to which the legislature has given its consent the commission may be sued. . . ." (161 Kan. p. 666.)

The trial court in this case was aware of the existence of the remedy in inverse condemnation. The existence of the remedy is acknowledged by the state highway commission. Summary judgment was entered, however, not because the remedy did not exist but because the court determined the plaintiffs had failed to allege that the land had been appropriated by taking possession or control over it.

The petition alleged that the defendants, ". . . in the course of grading the same [Highway I-635] removed the lateral support from plaintiffs' property." In the paragraph that followed are allegations concerning the crumbling and falling away of plaintiffs' properties onto the right-of-way which was being excavated to improve the highway system. Count II of the petition incorporated these statements and added the allegations concerning "unlawful taking" and the right to "inverse condemnation" previously quoted in this opinion. The allegations of the petitions appear to be sufficient.

The next question is whether lateral support is a property right. Therefore we must determine the nature of a landowner's right to the lateral support of his land before we can determine the availability of the remedy of inverse condemnation in this case. In 2 Thompson on Real Property (1961), § 415, p. 640, it is stated:

"The common law recognized a property right that all land remain in its natural condition supported by the soil of the neighboring tracts. . . ."

This right has been recognized in Kansas, and in the early case of *Winn v. Abeles*, 35 Kan. 85, 10 Pac. 443, the court said:

". . . Abeles was entitled to the lateral support of the soil of the adjoining lot, but this right did not extend to the support of the buildings which he might have placed on his lot. The right extends only to the soil, and does not include anything placed thereon which sensibly increases the pressure. . . ." (p. 90.)

In *Railroad Co. v. Schwake*, supra, this right to lateral support was again recognized and the court stated:

"It is a general rule, to which we have found no exception, that a landowner does not suffer damages recoverable at law for injury to lateral support of his property until the earth is so much disturbed that it slides or falls. . . ." (70 Kan. p. 145.)

The action in the *Schwake* case was held to have accrued at the time of the subsidence of the earth and not from the time of excavation. The case of *Jones v. Hacker*, 104 Kan. 187, 178 Pac. 424, deals with the rights and duties of the owner of a building constructed on a lot adjacent to an excavation which caused the building to fall.

We do not find any recent cases which involve the common law right of lateral support of the soil. The reason for this may be urbanization. Land in its natural state is disappearing and much land is now covered with improvements. In some jurisdictions a change in the law has occurred and statutes and ordinances have

been passed to afford protection to the owners of existing buildings from uncontrolled excavation. (See 5 Powell on Real Property, ¶ 702, p. 304.) We are unable to find any statute of the state of Kansas which changes the rules on the common law right of a landowner to lateral support of his land; none has been cited by the parties. The general common law rules pertaining to lateral support have been fairly well defined by the text writers and have been touched on in the early case law of Kansas. We are concerned here with these common law rules unchanged by statute or ordinance.

Between adjacent landowners the common law right to lateral support is that each has an absolute right to have his land laterally supported by the soil of his neighbor, and if either in excavating on his own premises so disturbs the lateral support of his neighbor's land as to cause it, in its natural state, by the pressure of its own weight, to fall away or slide from its position, the one so excavating is liable. This right of lateral support, unless changed by contract or statute, applies only to the land of the adjacent owner in its natural state, and does not include the right to have the weight of a building placed upon the land also supported. The right to the lateral support of natural soil is absolute, unless changed by contract or statute, and the only proof necessary is that the excavating was a direct and proximate cause of the injury to the adjoining land. Proof of negligence or intentional taking of soil is not necessary to a recovery. (See 2 Thompson on Real Property [1961] Ch. 16, p. 640; 5 Powell on Real Property, Ch. 63, p. 283.) Although land may not be in its natural state a right of lateral support may still be recognized and enforced if the subsidence would have occurred, regardless of the presence or absence of the alterations or additions. (*Winn v. Abeles,* supra; 5 Powell on Real Property, ¶ 701, p. 298; 2 Thompson on Real Property [1961], § 416, p. 657.)

In the case at bar it would appear to be a question of fact for the trier of fact to determine whether the sewer and water lines together with the other improvements on plaintiffs' properties have increased the tendency of the soil to subside and fall onto the right-of-way of the highway. If the subsidence would have occurred regardless of the presence or absence of the alterations or additions an action for removal of lateral support should not be foreclosed because of such improvements.

The next question raised by this appeal is whether the removal of lateral support from property adjacent to a highway right-of-way is an appropriation or taking for which an action for inverse con-

demnation will lie. The courts of other jurisdictions are divided on the question. (See annotations in 7 A. L. R. 806, 38 A. L. R. 19 and 44 A. L. R. 1494. See also Vol. 11, McQuillin, Municipal Corporations, § 32.37, p. 360.)

The trial court in rendering summary judgment for the state highway commission held that the removal of lateral support came within the rule of *Sester v. Belvue Drainage District,* supra, which precludes recovery for consequential or indirect damage to the property. In *Sester* the drainage district had previously constructed a ditch across plaintiffs' property. After ten years flood waters had eroded the ditch and caused an obstruction of silt to form in the mouth of the ditch. This obstruction was removed from the ditch by the drainage district and the resulting increased flow of water was alleged to have caused the ditch to enlarge onto plantiff's land. The question of whether there was a taking was submitted to a jury. The jury found that the intention of the drainage district was to straighten out the water flow and thereby reduce erosion. The jury further found the drainage district did not intend to acquire more right-of-way by means of erosion. In reversing a judgment in favor of the landowner, the *Sester* court placed as much emphasis on the fact that damage to the land was caused by the flow of surface waters as it did on the finding of the jury that there was no intention by the district to acquire more right-of-way.

In determining that only consequential or indirect damage occurred the *Sester* court said:

"To hold that a drainage district is liable for all consequential damages which might result from its exercise of governmental authority would cast upon its members an incomprehensible accountability. At times in floods little lazy streams become destructive torrents and colossal, uncontrollable devastation may result. The unpredictable vicissitudes which follow efforts in furtherance of flood control are so partially providential in character that mere mortals should not be harassed by the hazard of representative responsibility therefor. . . .

". . . However, the evidence is convincing that such land was lost to the appellee by reason of water flowing across appellee's land from the west through a natural swale or gully which always had existed on appellee's land. The water coming from the west through the swale in times of flood flowed into the drainage ditch, undermined its bank and caused it to fall in at the point where the gully reached the ditch. It is clear that such action was not caused by water flowing through the ditch but was caused by water coming down the fields through the swale, and the appellee so testified. . . ." (162 Kan. pp. 8, 9 and 10.)

The removal of lateral support by excavation which directly results in loss during that period of time the excavation is being completed on the adjacent right-of-way cannot be equated with the indirect and consequential damages considered in *Sester*. The common law right to the lateral support of natural soil is absolute and the only proof necessary is that the excavating was a direct or proximate cause of the injury to the adjoining land. Proof of negligence or intentional taking of soil is not necessary to a recovery.

Another case on consequential or indirect damages on which the lower court and the highway commission relied is *Foster v. City of Augusta*, 165 Kan. 684, 199 P. 2d 779. In that case the actions were filed on claims against the city for flood damage occurring some years after land for a dike had been condemned and the dike had been constructed. The court stated, "There is nothing in the statute [G. S. 1935, 12-639 *et seq.*] which makes the city liable in damages to the land, improvements or crops, or farm machinery resulting from a flood some years after the levee was constructed. . . ." (p. 693.) The case is clearly not applicable under the facts of our present case.

After examining the foregoing cases and others, such as *Richert v. Board of Education of the City of Newton*, 177 Kan. 502, 280 P. 2d 596, we are convinced the present facts and circumstances do not fall within the rule on consequential or indirect damages.

It is further argued that there was no intentional taking of possession or control over plaintiffs' soil and therefore no appropriation to use it for highway purposes. This argument overlooks the fact that it is not the soil which the highway commission has taken, it is the right to lateral support which is a valuable right and accompanies ownership and enjoyment of the adjoining land. The taking of the right of lateral support, we believe, is analogous to the taking of common law access rights for conventional highways.

As to access rights, we have held the right to control access on land abutting certain highways exists under the police power of the state but such control must be reasonably exercised. If the restriction placed on access is unreasonable or if a total restriction is imposed property rights are taken thereby and an abutting landowner is entitled to compensation for the taking.

In *Brock v. State Highway Commission*, supra, it is said:

"Where it is claimed that the State Highway Commission has taken the right of access to a controlled access highway without obtaining the right of access by condemnation or otherwise, the owner of land abutting the high-

way has a remedy by way of an action for damages in the nature of suit on an implied contract.

. . . . . . . . . . . . . .

"An action to recover damages for the taking of private property for public use without compensation is in the nature of an inverse condemnation proceeding and the same rules of law apply to the determination of the right to damages and the measure of damages as in a condemnation proceeding." (Syl. ¶¶ 1 and 3, 195 Kan. 361.)

The common law right to lateral support of natural soil is a valuable right which accompanies the ownership and enjoyment of the land itself. It may not be taken while constructing highway improvements without acquisition and payment, the same as any other right or interest in real property.

Our attention is directed to the provisions of K. S. A. 1972 Supp. 46-901 which provide:

"(*a*) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, *except as is otherwise specifically provided by statute:*

"(1) The state of Kansas; and

"(2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and

"(3) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas." (Emphasis added.)

This statute provides for state governmental immunity from liability on implied contracts as well as on tort negligence claims. In many of our inverse condemnation actions this court has categorized the actions as based upon implied contract. If this be their true nature they would appear to fall within the general prohibition of 46-901, *supra,* unless such actions are those for which waiver of immunity has been "otherwise specifically provided by statute".

An examination of *Atchison v. State Highway Comm.,* supra, indicates there is authority to support our holding here that the statutes authorizing the state highway commission to sue and be sued and to appropriate land for the construction and maintenance of highways (K. S. A. 74-2001 and K. S. A. 68-413) provide a legislative waiver of immunity to suits of this nature when private property is appropriated for the construction of highways.

The background which gave rise to K. S. A. 1972 Supp. 46-901 declaring state governmental immunity has been touched on in this opinion. The subject is more fully covered in *Woods v. Kansas Turnpike Authority,* supra, and in *Allen v. City of Ogden,* supra. Although we are aware of the background of the statute the inten-

tion of the legislature is not clear with respect to governmental immunity in inverse condemnation actions. If the statute was passed as an attempt to place the mantle of governmental immunity around the shoulders of the state highway commission in cases where actions in the nature of inverse condemnation have previously been authorized, we believe the statute violates constitutional guaranties.

Article 12, Section 4 of the Constitution of the State of Kansas provides:

"No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation."

The appropriation of a landowner's right to the lateral support of his land, while constructing a state highway, is a taking for which our constitution guarantees payment of full compensation.

If the provisions of K. S. A. 1972 Supp. 46-901 *et seq.* were intended by the legislature to place the cloak of governmental immunity around suits in the nature of inverse condemnation it becomes the duty of this court to safeguard the declaration of the right and the remedy guaranteed by the constitution and we must then declare the statute unconstitutional. *(Noel v. Menninger Foundation,* 175 Kan. 751, 267 P. 2d 934; *Neely v. St. Francis Hospital & School of Nursing,* 192 Kan. 716, 391 P. 2d 155.)

In *Whitehead v. State of Kansas Labor Department,* 203 Kan. 159, 453 P. 2d 11, it was held:

"When a statute is susceptible of more than one construction it must be given that construction which, when considered in its entirety, gives expression to its intent and purpose, even though such construction is not within the strict literal wording of the statute.

"A statute should if reasonably possible be construed to uphold its constitutionality." (Syl. ¶¶ 1 and 2.)

The policy of courts is to uphold legislative intent rather than to defeat it, and if there is any reasonable way to construe legislation as constitutionally valid it will be so construed. (*Hunt v. Eddy,* 150 Kan. 1, Syl. ¶ 4, 90 P. 2d 747.)

We believe that the foregoing rules of law are applicable in construing the present statute.

The state highway commission further argues that the appellants have a remedy to recover their damages, not in the nature of inverse condemnation but by filing such claim with committee of claims

and accounts of the state legislature as authorized in 46-904 *et seq.*

Under the separation of powers doctrine Article 3, Section 1 of the Constitution of the State of Kansas (K. S. A. 1972 Supp.), provides:

"The judicial power of this state shall be vested exclusively in one court of justice, . . ."

Section 18 of the Bill of Rights of the Kansas Constitution provides:

"All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

In *Noel v. Menninger Foundation,* supra, it was pointed out:

". . . The constitutional provision guaranteeing to every person a remedy by due course of law for injury done him in person or property means that for such wrongs that are recognized by the law of the land the court shall be open and afford a remedy. . . ." (p. 763.)

The foregoing portion of the *Menninger* opinion was reemphasized and quoted in *Neely v. St. Francis Hospital & School of Nursing,* supra, at page 719. Remedy by due course of law remains a remedy with the courts and not with committees of the legislature.

Accordingly we hold that the provisions of K. S. A. 1972 Supp. 46-901 *et seq.* do not provide the state or its agencies with governmental immunity from suits for the appropriation of property and interests therein arising from an appropriation of property in the construction and maintenance of the highways of this state.

The final argument of the plaintiffs is that if the doctrine of sovereign immunity is applied in this case it violates their federal constitutional rights by permitting the state highway commission to take their property without due process of law. In view of the decision which we have reached it is not necessary to explore that question. The courts of this state do afford them a remedy.

The judgment of the trial court entering summary judgments in favor of the state highway commission on Count I of the petitions is affirmed. The judgment in favor of the state highway commission on Count II of the petitions is reversed and the cases are remanded with instructions to proceed in accordance with the views expressed herein.