No. 20,724.

EZRA PEVER, *Appellant*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

DAMAGES—*Injury to Land—Enlargement of Railroad Ditch—Limitation of Actions*. The action was one for damages for injury to a tract of 140 acres of land, caused by enlargement through operation of the forces of nature of a ditch rightfully and properly dug by the railway company on its right of way to drain its roadbed. The ditch had deprived the plaintiff of the use of three and one-quarter acres of land adjoining the right of way. Damages were claimed for this injury, and for depreciation in the market value of the entire tract occasioned by the ditch. *Held*, a cause of action accrued when the ditch invaded the plaintiff's land, damages for permanent injury were then recoverable if desired, and the action was barred because not commenced within two years after the cause of action accrued.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed April 7, 1917. Affirmed.

*O. L. O'Brien*, and *W. L. McVey*, both of Independence, for the appellant.

*William R. Smith*, *Owen J. Wood*, *Alfred A. Scott*, *Harlow Hurley*, all of Topeka, and *Chester Stevens*, of Independence, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages for injury to land adjoining a railroad right of way, caused by the encroachment of a ditch dug originally on the right of way to drain the roadbed. An injunction against future injury was also prayed for. A demurrer to the plaintiff's evidence was sustained on the ground the action was barred by the two-year statute of limitation, and he appeals.

Some ten years before the action was commenced the road-bed was rebuilt and drainage was secured by construction of the ditch complained of. There was neither allegation nor proof that the ditch was not necessary for the purpose for which it was designed or was not properly constructed. It was alleged that the ditch was negligently placed so near the plaintiff's land that the defendant knew, or should have known, it would deepen and widen by process of erosion to such an extent as to deprive the plaintiff's land of lateral support, but there was no evidence that, from the standpoint of expert railway construction, the ditch was not properly located. The ditch, which was quite small when dug, did deepen and widen until in some places it passed under the plaintiff's fence and invaded his field. In some places the ditch is now fourteen feet wide and in some places it is now eight feet deep. Surface water flowing into the ditch from the plaintiff's land has cut some gullies, one of them extending back forty feet into the field. In some places the water has cut back under the sod for the distance of a foot and left the sod hanging. The soil crumbles and caves in from freezing, thawing and drying out. In this way the plaintiff has been deprived of three and one-quarter acres of land out of a tract of 140 acres.

The action was commenced on December 15, 1914, and the trial occurred in October, 1915. The plaintiff testified that it had been five or six years since he first complained of the ditch and tried to get the defendant to fix it, that is, to fix a place which he saw was going to break through. On February 26, 1912, the plaintiff complained of the ditch in a letter to the defendant's superintendent, in which he said the ditch was damaging him a great deal; that it was ruining the field, and that he wanted it attended to, to save damage. There was evidence that the value of the use of the land taken by the ditch was fifteen dollars per acre per year for the years 1914 and 1915. Three witnesses were called to prove that the market value of the entire tract of 140 acres had been diminished because of the washouts described. The witnesses estimated the damage at from three to five dollars per acre for the entire tract.

Proper drainage of the defendant's roadbed was a matter of importance. Duty to the public and duty to employees re-

quired that the track and grade be made secure from the action of water. So far as the evidence disclosed, the ditch, when dug, did no more than subserve these necessary purposes, and no legal duty to the plaintiff was violated. From natural causes the ditch, in course of time, encroached upon the plaintiff's land. The injury arose from not confining an essential feature of the defendant's roadbed to its own right of way, and in such cases the fact that the ditch was necessary and was not negligently constructed does not relieve from liability to make reparation.

The injury was in the nature of a trespass on real estate, and action for such an injury is barred in two years. (Civ. Code, § 17, subdiv. third.) There can be no doubt that a cause of action arose in favor of the plaintiff more than two years before suit was commenced, and the question is whether all relief is foreclosed, or whether the plaintiff may recover damages sustained within two years next preceding the commencement of suit. The plaintiff seeks to avoid the statute of limitation by claiming that his injury consisted in destruction of lateral support of his land occurring within the two years next preceding December 15, 1914.

In the case of *Railroad Co. v. Schwake,* 70 Kan. 141, 78 Pac. 431, a railroad company appropriated an alley of a city for the purpose of laying its tracks. A deep excavation was made near the lot line. It was held that a cause of action for deprivation of lateral support did not accrue until subsidence of the soil of the lots occurred. The same rule was applied in the case of *Audo v. Mining Co.,* 99 Kan. 454, 162 Pac. 344, in which subjacent support of the surface of land was removed by mining. If no cause of action accrue until subsidence occurs, the implication from these decisions would appear to be that no cause of action for a future subsidence accrues until it occurs.

In case of subsidence resulting from causes the operation of which is concealed from observation and the results of which can not clearly be foreseen, as from mining, recovery for future injury is impossible, and each new caving gives rise to a new cause of action. In case of subsidence resulting from common surface excavations, like drainage ditches, there is no difficulty in assessing, once for all, damages both present

and prospective, and that is the common practice in condemnation cases. Landowners usually prefer that remedy, and the policy of the law to discountenance multiplicity of suits favors it. Each season's experience demonstrates afresh what water in a drainage ditch through erosible soil will do. In this instance the plaintiff alleged that the defendant knew or ought to have known when the ditch was dug that it would cut into the field. Treating the case as one in which lateral support has been removed, it would be quite practical to say that although no cause of action accrued until subsidence occurred, permanent damages were then recoverable as they would be if the plaintiff chose to treat the encroachment of the ditch as a permanent appropriation of the land.

It is not easy to call this a lateral-support case. Weathering of banks is indeed one way in which injury from removal of lateral support is caused; but the cutting of channels in the plaintiff's field by surface water flowing over it into the ditch was erosion, and the cutting away of the banks of the ditch by water which it was designed to carry was erosion. While the water undermines the bank somewhat and the bank crumbles somewhat in dry weather, the widening and deepening of the ditch is no different in legal contemplation from what it would have been if the water had always washed away the top soil first. What in fact occurred was that a larger channel was opened, rather than that lateral support of the plaintiff's field was removed, causing it to slide into the ditch. If the defendant's graders had cut into the field with their plows and scrapers the plaintiff would have had at once a complete and adequate remedy at law for the injury done and for all future injury resulting from the action of water; and it seems quite artificial to say that because the graders stopped just at the plaintiff's fence the future action of the same water on the same land occasioned an injury of a different character, giving rise to a remedy of a different character. If, therefore, it be conceded that under the lateral support doctrine damages for future subsidences into this ditch, certain to occur after the next rain, could not be recovered in an action for a subsidence occasioned by the last rain, there is no reason for applying the doctrine here.

At the trial the plaintiff indicated the real purpose of the lawsuit. The petition claimed damages to the amount of $600. The evidence disclosed that $500 of this sum consisted of damages for permanent injury through depreciation in market value of the entire tract of land. A right of action for this purpose accrued at least as soon as the ditch extended itself into the plaintiff's field, which, according to the plaintiff's own declaration, was earlier than February, 1912. (*McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899.)

The plaintiff concedes that the railroad was a permanent thing, but argues that the ditch was not. The court regards the ditch as an integral part of the defendant's roadbed. The plaintiff says he had a right to assume the defendant would fix the ditch before it caused him substantial injury. The plaintiff testified at the trial that he had tried to get the defendant to fix the ditch "five or six years ago." The plaintiff says it was not the purpose of the ditch to undermine the plaintiff's land. It was not the purpose of the oil refinery in the Cherryvale case to pollute the stream. The purpose was to refine oil. The ditch was designed to serve as a waterway, and its use for that purpose caused injury, just as the operation of the refinery caused injury. By electing to claim damages for permanent injury, an adequate remedy, the right to further equitable relief was waived.

The judgment of the district court is affirmed.