No. 20,992.

J. J. WALSH, *Appellant,* v. THE KANSAS FUEL COMPANY, *Appellee,* and W. H. BARRETT.

SYLLABUS BY THE COURT.

1. MINING COAL—*Unambiguous Contract—Construction—Matter for the Court.* Where a contract is not ambiguous, and there is no charge of fraud, accident, or mistake, the intention of the parties must be ascertained from the contract, and its construction is a matter of law for the court and should not be submitted to the jury.

2. SAME—*Subsidence of Surface—Damages—Statute of Limitations.* An action for damages caused by the subsidence of the surface of land, brought about by mining coal therefrom, is not barred by the statute of limitations until two years have elapsed after the surface has subsided.

3. SAME—*Judgment—Supported by Evidence.* There was evidence which tended to show that the surface of the land had subsided in 250 or 260 different places within two years prior to the commencement of this action, and there was also evidence which tended to show the decrease in the value of the surface of the land caused by the subsidence of that surface.

Appeal from Wilson district court; JAMES W. FINLEY, judge. Opinion filed December 8, 1917. Reversed.

C. A. McNeill, Maurice McNeill, both of Columbus, and P. C. Young, of Fredonia, for the appellant.

Al F. Williams, S. L. Walker, both of Columbus, and W. R. Thurmond, of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover damages for the subsidence of the surface of real property, caused by mining coal therefrom. Judgment was rendered in favor of the defendants, and the plaintiff appeals from the judgment in favor of the Kansas Fuel Company.

Under a lease, the Kansas Fuel Company mined coal from land owned by the plaintiff. Mining operations under that lease were commenced in 1903 and continued until about April 1, 1912. After the coal had been taken from the land, portions of the surface thereof subsided, or caved in. The cave-ins occurred repeatedly from the beginning of mining operations until the commencement of this action. This action was brought to recover damages for all the cave-ins that had occurred within twenty months prior to April 20, 1912.

1. Complaint is made of an instruction in which the court told the jury that the plaintiff's intention to waive subjacent support was a question of fact for them to determine from the lease, acts and conduct of the parties in relation thereto. That instruction was as follows:

"You are instructed as a matter of law that the owner of real estate who leases the same for mining purposes, nevertheless has the right to subjacent support of the surface. And he will not be deemed to have waived, conveyed or lost such right, unless it appears from the language used in the lease or conveyance that it was the intention to convey that also. The matter of construing a contract or other written instrument is a matter to be disposed of by the court; and you are instructed that according to the terms and condition of the mining contract or lease entered into between the plaintiff and defendant W. H. Barrett, it does not clearly appear to have been the intention of the plaintiff J. J. Walsh to convey his rights to the subjacent support to the surface of the land leased. The question as to whether or not such was his intention is a question of fact for you to determine from the lease and the acts and conduct of the parties in relation thereto at the time of making and subsequent thereto. Should you believe from all the evidence that it was the intention of the plaintiff Mr. Walsh to convey the right to subjacent support to the surface, then and in such an event he can recover nothing

in this action, and your verdict should be for the defendants. And in determining the intent of Mr. Walsh at the time the lease was made, you have the right to take into consideration all his subsequent acts and conduct in relation thereto as shown by the evidence, and determine therefrom what his intention may have been at the time the lease was made. Or if you should believe that Mr. Walsh knew, at the time of the making of the lease, that the coal could not be successfully removed from his land without destroying the subjacent support to the surface, then and in such an event you should return a verdict in favor of the defendants."

The last half of the instruction is the part of which complaint is made. The complaint is well founded. The intention of Walsh was expressed in his contract, and unless that contract was ambiguous no evidence was admissible to alter, vary or contradict any of its terms; and the question of the intention of the parties, at the time the contract was signed, should not have been submitted to the jury. In *Walsh v. Fuel Co.*, 91 Kan. 310, 137 Pac. 941, a former appeal in this action, this court said:

"Where the owner of land retains the surface estate and conveys the estate in minerals thereunder, he may convey or waive the right of subjacent support for the surface, but such conveyance or waiver should not be implied unless the language of the instrument of conveyance is appropriate therefor and clearly indicates such to be the intention of the parties to the conveyance." (Syl. ¶ 2.)

And in the opinion said:

"The contract in this case is not ambiguous in the usual sense." (p. 313.)

To show that the plaintiff waived subjacent support, the Kansas Fuel Company relies on the following language contained in the lease:

"Said second party to work and mine said coal in a good, careful, and workmanlike manner, and not leave unnecessarily any coal which should be and can be mined with safety to the mine and miner, and said second party shall not be required to work low places or rolls which cannot be mined except at a loss."

The language quoted does not clearly indicate any intention on the part of the plaintiff to waive the right to subjacent support for the surface of the land. That question was disposed of on the former appeal.

The instruction was misleading and should not have been given. The terms of the lease cannot in any way be altered, varied, or contradicted, except for fraud, accident, or mistake.

None of these things was alleged, and no attempt was made to prove any of them.

2. Another complaint is made of the following instruction:

"You are instructed that in estimating the damages that may have occurred within the two years as heretofore pointed out, you are not to count the damages from the time you may have found the cave-ins to have occurred, but you are to count the damage on from the time when the coal may have been removed. Therefore, you are instructed that if you find for the plaintiff, he can only recover for the damages to such portion of the land as to which the coal may have been removed within the two years next preceding April 20, 1912."

The instruction was erroneous. In *Audo v. Mining Co.*, 99 Kan. 454, 162 Pac. 344, it was held that a cause of action for damages caused by the subsidence of land into excavations made by a mining company did not accrue until the land subsided. It is only just to say, however, that the present action was tried before the opinion in the Audo case was handed down.

Complaints are made of other instructions, but they are not deemed of sufficient importance to require special attention.

3. The Kansas Fuel Company attempts to answer the complaint concerning the instructions by arguing that there was no evidence to show the number of cave-ins that had occurred within two years, or within twenty months, prior to the commencement of this action, and by arguing that there was no evidence to segregate the damages caused by the cave-ins that had occurred within the two years or twenty months prior to the commencement of this action from the cave-ins that had occurred during the entire period covered by the mining operations of the fuel company. On the contrary, the abstract shows that there was evidence which tended to prove that 250 or 260 cave-ins had occurred within the periods named. The abstract also shows that there was evidence which tended to prove the value of the land at the beginning and at the end of those periods. That evidence also tended to show that the value of the land had decreased materially during that time, and that the decrease in value had been caused by the cave-ins.

The judgment is reversed and a new trial is directed as to the Kansas Fuel Company.