No. 67,571

GARY NIDA and DEBBIE NIDA, *Appellants*, v. THE AMERICAN ROCK CRUSHER COMPANY, J.A. TOBIN CONSTRUCTION COMPANY, INC., and J.E. TOBIN, *Appellees*.

(855 P.2d 81)

Opinion filed June 16, 1993.

*Thomas T. O'Neill*, of Carson & Fields, of Kansas City, argued the cause, and *Blaise R. Plummer*, of the same firm, was with him on the briefs for appellants.

*Frank C. Weidling*, of Boddington & Brown, Chtd., of Kansas City, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs, Gary and Debbie Nida, appeal from an order of the district court entering summary judgment against the Nidas in an action for damages to their residence. The Nidas' residence was damaged when the surface of their land sank approximately 10 feet due to subsurface mining operations,

which had ceased 30 years before the subsidence occurred. Summary judgment was granted on the grounds that the Nidas' action, which was brought within two months of the collapse, was untimely under K.S.A. 1992 Supp. 60-513(b). The Court of Appeals affirmed in an unpublished opinion filed October 16, 1992, and this court granted the Nidas' petition for review.

The facts are not in dispute, and we adopt the Court of Appeals' statement of facts.

"American Rock [The American Rock Crusher Company] operated a limestone mine, commonly known as the Argentine mine, in the vicinity of 37th and Woodland in Kansas City, Wyandotte County, Kansas, which was underneath property owned by the Nidas and other individuals. The last quarrying operations occurred in June 1960. American Rock was dissolved in February of 1965.

"The first land collapse allegedly caused by the mining operations occurred in January 1965, resulting in the filing of several lawsuits that were subsequently consolidated, but did not involve the Nidas.

"On April 18, 1990, an area roughly 100 yards in diameter, located immediately north of the Nidas' home, collapsed a depth of approximately 10 feet into an abandoned rock quarry once mined by American Rock. This subsidence took with it a 60 × 20 foot garage on the north side of the Nidas' property and caused damage to their home.

"The Nidas filed suit on June 7, 1990, against American Rock, Tobin Construction [J.A. Tobin Construction Company, Inc.], Tobin [J.E. Tobin], and other individuals and corporations. Eventually only Tobin Construction and Tobin remained as defendants."

The sole issue is whether the Nidas' action is barred by the 10-year statute of repose, K.S.A. 1992 Supp. 60-513(b). The district court entered summary judgment against the Nidas on the ground that K.S.A. 1992 Supp. 60-513(b) "serves as an outside bar on the claims of the plaintiffs which have been raised in this case." The district court reasoned that the statute required the Nidas' claim to "be brought within ten (10) years *of the last act of defendant* from which such causes of action could be deemed to have arisen." (Emphasis added.) Because the suit was filed "at least twenty-five (25) years after the last activity" of defendants, the action was barred.

K.S.A. 1992 Supp. 60-513 provides in pertinent part as follows:

"(a) The following actions shall be brought within two years:
(1) An action for trespass upon real property.
. . . .

"(b) . . . [T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

The Court of Appeals "reluctantly agree[d] with the trial court."

The Nidas urged that the time at which the cause of action based upon subsidence accrues is at the time of the subsidence. They relied exclusively on *Audo v. Mining Co.*, 99 Kan. 454, 162 Pac. 344 (1917). Syllabus ¶¶ 1 and 2 of *Audo* state:

"A mining company mined the coal from part of the land owned by it, and then conveyed the land, reserving all the underlying coal and other minerals. Nothing was said in the deed about subjacent support. The purchaser knew that the coal had been mined from part of the land, but had no personal knowledge of the manner in which the mine had been worked. A portion of the surface over that part of the land from which the coal had been mined previous to the making of the deed, subsided after the land had been conveyed. *Held*, that the purchaser has a cause of action against the mining company for the damage caused by the subsidence of the surface."

"Such a cause of action does not accrue until the subsidence of the land occurs, and the statute of limitations does not begin to run until that time."

In *Audo*, the court stated the following rule: "Where real property has been separated so that one person owns the surface and another owns a substratum, or the minerals under the surface, the person that owns the surface has an absolute right to subjacent support unless that right has been distinctly waived." 99 Kan. at 457-58.

The Court of Appeals cited three additional examples from the line of Kansas cases which holds "that an actionable wrong for impairment for lateral and subjacent support is not the excavation, but the act of allowing the owner's land to fall": *Walsh v. Fuel Co.*, 102 Kan. 29, 32, 169 Pac. 219 (1917); *Pever v. Railway Co.*, 100 Kan. 266, 268-69, 164 Pac. 159 (1917); and *Railroad Co. v. Schwake*, 70 Kan. 141, 145-46, 78 Pac. 431 (1904).

The Nidas contended that, under *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991), the 10-year statute of repose is not an absolute cut-off, and the statute did not bar their claim.

The Court of Appeals reluctantly rejected the Nidas' theories:

"Either of these arguments might have been valid prior to July 1, 1989, but neither [has] any validity now. A trilogy of cases recently decided by the Kansas Supreme Court, *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, Syl. ¶ 1, 832 P.2d 345 (1992); *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 659, 831 P.2d 958 (1992); and *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, Syl. ¶ 7, 829 P.2d 578 (1992), hold otherwise and are fatal to the Nidas' argument."

It concluded:

"We cannot hold that the act giving rise to a cause of action was the falling of the property when the clear message sent to us by the legislature and the Supreme Court is that the 10-year period of repose begins to run from the time the last act is performed."

The Court of Appeals viewed *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 829 P.2d 578 (1992), as controlling. It quoted the following paragraph:

"The 1987 amendment to K.S.A. 60-513 governs the Bank's cause of action. The amended statute still contains the substantial injury test: If the original wrongful act causes substantial injury, the two-year statute of limitations begins to run at the time of the original act. If substantial injury does not occur at the time of the original act but occurs later, then the two-year statute of limitations begins to run when the injury is reasonably ascertainable. Both prongs of the substantial injury test are subject to the ten-year 'discovery' rule. The plain language of the statute and the applicable case law require that after July 1, 1989, a negligence action must be brought within 10 years of the original wrongful act or the action is barred." 250 Kan. at 698.

The Nidas argue that the Court of Appeals reached the wrong result because it failed to distinguish between the act giving rise to a negligence cause of action, as in *Admire Bank*, and the act giving rise to a trespass cause of action, as in the present case.

The Nidas take the position that 'the act giving rise to the cause of action' is the collapse of their surface land. They contend that their action was not barred by 60-513(b) because it was commenced within 10 years of the time when their surface land collapsed. American Rock takes the position that the act giving rise to the cause of action was the underground quarrying activity. It contends that the Nidas' action was correctly barred because it was commenced more than 10 years beyond the time of the cessation of mining activity.

. Support for the Nidas' position is found in *Audo* and the Kansas cases cited by the Court of Appeals for the proposition that it is the subsidence rather than the excavation which constitutes the actionable wrong. Audo filed his action within two years of the cave-ins, but more than 10 years after the subsurface coal had been mined. 99 Kan. at 460. The key to determining whether the action was timely was deciding when the cause of action accrued. If the cause of action accrued at the time the coal was taken from under Audo's land, the action would be barred. If the cause of action accrued at the time the surface subsided, the action would be timely. The court reasoned as follows:

"Until the land subsided the plaintiff sustained no damage and had no cause of action. In *Railroad Co. v. Schwake*, 70 Kan. 141, 78 Pac. 431, this court said:

'Where a railroad company appropriates an alley in a city for the purpose of laying its tracks, and makes a deep excavation therein close to the lot line, the damages recoverable by an abutting owner are restricted to the special injury sustained by him by reason of being cut off from access to, and egress from, his property. A landowner does not suffer damages recoverable at law for injury to lateral support of his property until the earth is so much disturbed that it slides or falls. The actionable wrong for impairment to lateral support is not the excavation, but the act of allowing the owner's land to fall.' (Syl.)

"In Note, 23. L.R.A., n.s., 805, this language is found:

'So far as the cases are concerned which deal with the applicability of the statute of limitations to actions for injury to the surface caused by mining operations or other excavations, the great weight of authority is to the effect that a cause of action does not arise until some actual mischief has been done, from which time the statute of limitations begins to run, regardless of when the mining or other excavating was done.'

"The plaintiff's cause of action did not accrue until the land subsided; and it follows that at the time this action was commenced it was not barred by the statute of limitations." 99 Kan. at 460.

In *Walsh v. Fuel Co.*, 102 Kan. 29, the surface of the land had subsided approximately 250 times within two years before the action was commenced. The subsurface coal had been mined until April 1912. The jury had been instructed that the surface landowner could " 'only recover for the damages to such portion of the land as to which the coal may have been removed within the two years next preceding April 20, 1912.' " 102 Kan. at 32. This court cited *Audo* and concluded that the instruction was incorrect because "a cause of action for damages caused by the

subsidence of land into excavations made by a mining company did not accrue until the land subsided." 102 Kan. at 32.

In *Railroad Co. v. Schwake,* 70 Kan. 141, Schwake owned land adjoining railroad lines. Schwake's lot in Leavenworth abutted an alley which the railroad company excavated to a depth of 18 feet to accommodate its track. The theory of the lawsuit was that there was a permanent "appropriation" of the alley, which "involved the weakening of the lateral support of the rear end of the lots abutting on the alley" due to the excavation. 70 Kan. at 145. The jury found for the landowners; this court reversed. The jury improperly allowed damages for injury to lateral support when none of the adjoining property had slipped or fallen into the excavation. In reversing, the court reasoned as follows:

"It is a general rule, to which we have found no exception, that a landowner does not suffer damages recoverable at law for injury to lateral support of his property until the earth is so much disturbed that it slides or falls. The principle was well stated in *Schultz v. Bower,* 57 Minn. 493, 496, 59 N.W. 631, 47 Am. St. Rep. 630, 632, thus:

'Where one, by digging in his own land, causes the adjoining land of another to fall, the actionable wrong is not the excavation, but the act of allowing the other's land to fall.'

"A leading case on the subject was decided in the house of lords, in which it was held that the statute of limitations began to run on an action for damages based on impairment of lateral support of land not from the time of excavation but from the actual occurrence of the mischief, which in that case was the subsidence of the earth by the working of a mine under the plaintiff's land. (*Backhouse v. Bonomi,* 1 B. & S. 970.) Counsel in the case referred to argued that the plaintiffs were entitled to recover prospective damages for any loss which they could have shown would arise, or might reasonably be expected to arise, from the withdrawal of lateral support. It was decided otherwise." 70 Kan. at 145-46.

In *Pever v. Railway Co.,* 100 Kan. 266, Pever sued the railroad for damage to his adjoining property from a drainage ditch excavated by the railroad on its right-of-way. Discussing the nature of the action, the court stated:

"The injury arose from not confining an essential feature of the defendant's roadbed to its own right of way, and in such cases the fact that the ditch was necessary and was not negligently constructed does not relieve from liability to make reparation.

"The injury was in the nature of a trespass on real estate." 100 Kan. at 268.

Each of the four cases discussed in the preceding paragraphs is mentioned in an annotation at 26 A.L.R. 1235, "Limitation of actions: when does statute begin to run against action based on removal of lateral or subjacent support?" The introductory paragraph of the annotation states:

"The decided weight of authority is to the effect that the Statute of Limitations does not begin to run against a cause of action for injury to the surface by removal of the lateral or subjacent support, until some actual mischief has been done to it, regardless of when the excavating was done. In other words, where injury to the surface results from the removal of the support, the statutory period dates from the actual injury rather than from the date of the removal."

In *Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981 (1973), the nature of an action based on the right to lateral support was stated as follows:

"The right to the lateral support of natural soil is absolute, unless changed by contract or statute, and the only proof necessary is that the excavating was a direct or proximate cause of the injury to the adjoining land. Proof of negligence or intentional taking of soil is not necessary to a recovery." Syl. ¶ 2.

The court concluded that landowners whose back yards were falling into the excavation for I-635 could proceed against the state agency on a theory of inverse condemnation. Their claims based on tort, however, were precluded by the doctrine of sovereign immunity.

The appellees rely on the reasoning and logic of this court's recent decisions in *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 832 P.2d 345 (1992); *Admire Bank*, 250 Kan. 688; and *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992), interpreting and applying K.S.A. 1992 Supp. 60-513(b) to negligence actions. The question in *Dobson* was whether the homeowners' suit against the contractor was barred by 60-513(b). The Dobsons alleged that the contractor's negligent use of inferior materials in the foundation and failure to adequately compact the soil resulted in damage to their house. The contractor's work was completed in 1972; suit was not filed until 1990. The court found the Dobsons' action was barred. The court stated: "We have held the legislature intended the 1987 amendment to K.S.A. 60-513(b) to be a statute of repose, with 10 years from the occurrence of

the act giving rise to the cause of action as the absolute limit for filing actions. *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958 (1992); *Admire Bank & Trust v. City of Emporia,* 250 Kan. 688, 829 P.2d 578 (1992)." 251 Kan. at 52-53.

In *Harding,* the court distinguished between statutes of limitations and statutes of repose. It stated that "the 10-year provision in K.S.A. 1991 Supp. 60-513(b), 'but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action,' is a statute of repose." 250 Kan. at 669. The general principles stated by the court with regard to a statute of repose are as follows:

"A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive. Thus, Kansas constitutional protection applies only to statutes of repose [and not to statutes of limitations, which are procedural] because they pertain to substantive rights." 250 Kan. at 668.

Harding was diagnosed and died in 1988 of mesothelioma, which results from exposure to asbestos. The last possible date of his exposure to asbestos-containing products manufactured or sold by defendant K.C. Wall Products was in 1976. When Harding's widow filed suit in 1990, K.C. Wall Products moved for summary judgment on the ground that the action was barred by 60-513(b). The district court denied the motion, and this court affirmed. The cause of action was saved from extinction by K.S.A. 1992 Supp. 60-3303. That statute provides that the 10-year period of repose in 60-513(b) does not apply to claims for latent diseases caused by exposure to harmful materials.

In *Admire Bank,* 250 Kan. 688, the bank sued the City of Emporia in 1990. The bank bought the buildings at 510 and 514 Commercial Street sometime after the City demolished the building at 516, with which the building at 514 had shared a common wall. The bank alleged that the City had a duty to use reasonable care to protect the structural integrity of the party wall and to avoid damage to the remaining building and that the City had failed to leave lateral support and to close the stone caps against moisture. The resulting damage necessitated demolition of the buildings at 514 and 510 Commercial. The date of demolition of 516 was not established, but the City approximated it to be 1970.

In this regard, the court stated that "the record does not show the trial court had any evidence before it that would support an approximate date the building was torn down." 250 Kan. at 693.

With respect to the statute of limitations, the court stated: "The date of substantial injury was never established. A factual issue remains (when the statute of limitations commences to run)." 250 Kan. at 693-94. Thus, the trial court was found to have erred in granting summary judgment on the ground that the 10-year provision of 60-513(b) barred the action. The court concluded that the current version of 60-513(b) governed and remanded for further proceedings.

Earlier in this opinion, a paragraph about the 1987 amendment to K.S.A. 60-513 was quoted from this court's opinion in *Admire Bank.* That paragraph was this court's paraphrasing, in terms suited to a negligence action, the substance of 60-513(b). Where the statute is worded "10 years beyond the time of the act giving rise to the cause of action," the court stated "within 10 years of the original wrongful act." In *Harding,* an action sounding in negligence and strict liability due to design defect and failure to warn, the court stated that the statute of repose "usually runs from an act of a defendant." 250 Kan. 655, Syl. ¶ 6.

As established in *Pever,* an action for surface collapse due to inadequate subjacent support is in the nature of a trespass on real estate, an intentional tort. See Restatement (Second) of Torts, § 158 (1965). The actionable wrong is the intrusion upon the surface of the land which interfered with the right of the surface owner to exclusive possession and enjoyment of the land and which was a direct result of some act committed by the defendant. See Prosser & Keeton on Torts § 13 (5th ed. 1984). In a trespass action, the intrusion and the interference and the occurrence of damage are concurrent. The act committed by the defendant may have taken place much earlier, but there was no trespass until the surface was affected.

The theory of a negligence action differs in that the wrongful act is the act of the defendant. Once it takes place the negligence has occurred, even though the harmful consequence may not be manifest until later.

Although a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not,

run from an act of defendant. There is no trespass until the entry is accomplished *and* the damage occurs (or has begun to occur, as in a case of continuing trespass). The trespass counterpart of the negligence "wrongful act" is the entry and the damage. In the present case, the entry was accomplished and the damage occurred when the surface fell.

*Dobson, Harding,* and *Admire Bank* were negligence and product liability cases. They are distinguishable from the present case in that the "act giving rise to the cause of action" was the wrongful act of negligence or manufacturing and selling a defective or harmful product. Here, the "act giving rise to the cause of action" was the subsidence of the surface and not the mining operations. The mining of the coal was not wrongful and did not give rise to a cause of action during or upon completion of the mining of the coal. We held in *Audo* that the surface owner has an "absolute right to subjacent support unless that right has been distinctly waived." 99 Kan. at 458. Further, the subjacent support right entitles a surface owner to damages when injury to the surface actually occurs. Here, as in *Audo,* the subsiding of the land is the "act giving rise to the cause of action," and, since the injury to the surface was not immediately ascertainable, the statute of limitations does not begin to run until it was manifest. Thus, the action by the Nidas was not barred by K.S.A. 1992 Supp. 60-513(b).

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded for further proceedings.

HOLMES, C.J., and MCFARLAND, J., dissenting.

DAVIS, J., not participating.

TERRY L. BULLOCK, district judge, assigned.