Kathy Patton STRUNK, et al., Plaintiffs,

v.

LEAR SIEGLER, INC.,
et al., Defendants.

No. 91–2331–JWL.

United States District Court,
D. Kansas.

Feb. 18, 1994.

---

**20.**  The court also denies the State's request for attorneys' fees and court costs incurred in the defense of this claim.

motion to strike (Doc. # 178). A hearing was held on these motions on February 14, 1993, and they are ripe for decision. For the reasons set forth below, the motions are denied.

James A. Patton, Patton Law Office, Hiawatha, KS, Robin G. Maxon, Robin G. Maxon Law Firm, Topeka, KS, Gary D. McCallister, Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS, for Kathy Patton Strunk and Ryan M. Patton.

Curtis L. Tideman, Lathrop & Norquist, Overland Park, KS, Gregory L. Musil, William V. North, Shughart, Thomson & Kilroy, Overland Park, KS, Daniel M. Dibble, Lathrop & Norquist, Kansas City, MO, Thomas A. Sheehan, R. Lawrence Ward, Mark A. Olthoff, Dennis D. Palmer, Philip W. Bledsoe, Shughart, Thomson & Kilroy, Kansas City, MO, for Lear Siegler, Inc. and Lear Siegler Diversified Holdings Corp.

Curtis L. Tideman, Lathrop & Norquist, Overland Park, KS, Daniel M. Dibble, Jennifer H. McCoy, Brian J. Madden, Lathrop & Norquist, Kansas City, MO, for Hutchinson Wil–Rich Mfg. Co.

Gregory L. Musil, William V. North, Shughart, Thompson & Kilroy, Overland Park, KS, Thomas A. Sheehan, R. Lawrence Ward, Mark A. Olthoff, Dennis D. Palmer, Shughart, Thompson & Kilroy, Kansas City, MO, for Rapistan Corp., LSDHC Corp., LS Acquisition Corp. No. 27, LS Acquisition Corp. No. 50, LS Acquisition No. 27, LS Acquisition Corp. No. 6, LS Acquisition Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This matter involves various product liability claims brought by plaintiffs against the manufacturers and distributors of the Wil–Rich Field Cultivator, which is a piece of heavy farming equipment. The matter is currently before the court on defendants' motions for leave to amend their answers (Docs. # 162 and 163); defendants' motions for summary judgment (Docs. # 165 and 167); and defendant Hutchinson Wil–Rich's

#### II. Factual Background

The following facts are uncontroverted. Plaintiff Ryan Patton's father purchased the cultivator from a Wil–Rich dealer in 1977. The cultivator is 28 feet wide and consists of a main body and two "wings." The wings are raised and lowered hydraulically by the use of cylinders attached to each wing and controlled from the cab of the tractor. When fully raised the wings are approximately at a 90 degree angle. When raised, the wings are held up by hydraulic pressure if the cylinders are correctly attached and fully charged. The wings can also be held up by a lock pin which is inserted manually. If the hydraulic cylinders are not properly attached and fully charged, the wing will fall rapidly when the lock pin is removed.

On April 21, 1990, Ryan Patton was changing a hydraulic wing lift cylinder on the cultivator. The wings were fully raised and pinned up by the lock pin. Patton finished changing the cylinder and proceeded to remove the lock pin on the right wing. He did so by standing directly under the raised right wing of the cultivator and pushing up on the wing. This relieved pressure on the lock pin and Patton proceeded to pull it out. When he did so the wing fell on him, causing him serious injury.

#### III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could

return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251– 52, 106 S.Ct. at 2511–12.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554.

*IV. Discussion*

█ In their motions for summary judgment, defendants contend that plaintiffs' cause of action is barred by K.S.A. § 60–3303 in that the useful safe life of the cultivator involved in this case presumptively expired in 1987 and plaintiffs cannot present sufficient evidence to rebut that presumption. K.S.A. § 60–3303 provides as follows:

**Useful safe life ten-year period of repose; evidence; latent disease exception; reviving certain causes of action.** (a)(1) Except as provided in paragraph (2) of this subsection, a product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired. "Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. For the purposes of this section, "time of delivery" means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold.

Examples of evidence that is especially probative in determining whether a product's useful safe life had expired include:

(A) The amount of wear and tear to which the product had been subject;

(B) the effect of deterioration from natural causes, and from climate and other conditions under which the product was used or stored;

(C) the normal practices of the user, similar users and the product seller with respect to the circumstances, frequency and purposes of the product's use, and with respect to repairs, renewals and replacements;

(D) any representations, instructions or warnings made by the products seller concerning proper maintenance, storage and use of the product or the expected useful safe life of the product; and

(E) any modification or alteration of the product by a user or third party.

(b)(1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

In this case, it is undisputed that the defendants fall within the statutory definition of "a product seller." K.S.A. 60–3302(a). It is similarly undisputed that the cultivator was delivered to Ryan Patton's father, the product's first purchaser who was not engaged in the business of selling such product, in 1977. It is also undisputed that the harm was caused more than ten years after delivery, on April 21, 1990, when the cultivator wing fell on Ryan Patton, causing serious injury. Thus, defendants contend that they have met their burden of proving, by a preponderance of the evidence, that plaintiffs' harm was caused after the cultivator's presumed ten-year useful safe life had expired. Plaintiff therefore has the burden of proving, by clear and convincing evidence, that the cultivator's useful safe life had not expired by April 20, 1990, the date of Ryan Patton's injury. Defendants contend that they are entitled to summary judgment because plaintiffs cannot provide sufficient evidence to meet their burden to prove by clear and convincing evidence that Ryan Patton's harm occurred during the safe life of the product.[1]

Not content to rely solely on the ten-year presumption, defendants point to additional evidence which they contend preclude any rebuttal of the ten-year useful safe life presumption by plaintiffs. This evidence includes evidence that numerous worn out or broken parts of the cultivator, including "wheel bearings", "shanks", "tandem bearings", "shovels", "tires", and "harrow teeth", have been repaired or replaced by plaintiffs, resulting in a rebuilt machine that was not the same machine as originally purchased. Defendants contend that without replacement of these worn out or broken parts, the cultivator would have become useless long ago. Defendants also point to the testimony of John Kerwald, who is Hutchinson Wil-Rich's vice president of engineering and manufacturing. Mr. Kerwald states that cultivators such as the one involved in Ryan Patton's accident have a useful safe life of less than ten years and that the cultivator involved in this case showed signs of significant wear and tear.

In response, plaintiffs begin with the fact that the cultivator continues to be used in normal farming operations to this day.[2] Plaintiffs also offer expert testimony from two duly licensed, professional engineers, both of whom personally inspected the cultivator, that the useful safe life of the cultivator well exceeds 10 years. One of plaintiffs' experts states that the useful safe life of the cultivator "with a reasonable degree of engineering probability approximates 20 years depending upon use and maintenance." The other expert states that the useful safe life of the cultivator, when maintained as it has been by the Pattons over the years, is "in the neighborhood of 20 to 30 years." The experts state that the cultivator is manufactured using a very durable main frame assembly that is built to last for a considerable period of time in excess of ten years, and that the cultivator utilizes a design that has the ability for parts, such as shanks, shovels, bearings, cylinders and tires, which are subject to normal wear and tear, to be replaced as needed. However, the main frame remains unchanged throughout the useful service life of the equipment. Both experts state that the cultivator has not been subjected to any excessive or abnormal wear and tear nor been modified or altered in any way which affected normal use and operation. The experts also state that due to the expense involved in purchasing heavy agricul-

---

1. There is some disagreement among courts as to the evidentiary standard that should be applied in deciding a summary judgment motion on this issue. In *Hendricks v. Comerio Ercole,* 763 F.Supp. 505 (D.Kan.1991), plaintiffs were held to a clear and convincing standard. However, in *Baumann v. Excel Industries, Inc.,* 17 Kan. App.2d 807, 845 P.2d 65 (1993), the Kansas Court of Appeals held that a preponderance of the evidence standard applies at the summary judgment stage when a plaintiff is attempting to overcome the ten year useful safe life presumption. Because we find that plaintiffs have pre-sented evidence sufficient to create a question of material fact as to the ten year useful safe life presumption even under the clear and convincing standard set forth in *Hendricks,* the court finds that an analysis as to the applicability of the different standards is not necessary in this case.

2. The court notes that this fact, standing alone, has little or no bearing on determining whether the useful safe life of a product has expired. *See Baumann v. Excel Industries, Inc.,* 17 Kan. App.2d 807, 817, 845 P.2d 65 (1993).

tural equipment, such as the cultivator, it is intended within the agricultural industry for this type of equipment to be both durable and built to have an extended service life in excess of 10 years.[3]

Defendants urge that the facts of this case are substantially similar to those in *Baumann v. Excel Industries, Inc.*, 17 Kan. App.2d 807, 845 P.2d 65 (1993), in which the trial court granted summary judgment in favor of defendants on the useful safe life issue. However, we find *Baumann* distinguishable in several areas. Most importantly, although the expert in *Baumann* testified that he saw the useful life "being as long as you want to repair the mower," the expert admitted that he had not been asked to address whether the useful safe life of the mower had expired and his opinion was based upon his looking at the parts list, coupled with his knowledge of the components of the mower. He also stated that he felt useful safe life was more an "academic" than a "practical" phrase in the industry. In contrast, the experts in the present case have personally inspected the cultivator and stated that based upon their engineering expertise, and upon the standards prevailing in the agricultural industry, the cultivator had an expected useful safe life of approximately 20 to 30 years. Further, in the present case there is evidence that the main frame assembly was built to last for a considerable period of time in excess of ten years and that the cultivator utilized a design that anticipated normal, routine replacement of those parts actually involved in the tilling of soil.

The court finds this case closely analogous to *Hendricks v. Comerio Ercole*, 763 F.Supp. 505 (D.Kan.1991). In *Hendricks*, the court denied summary judgment on the basis of the useful safe life defense, finding that the wire calendar machine involved in the plaintiff's injury had been in continuous use for more than 20 years and the product was "heavy machinery" which was expected to have an extended life in excess of 10 years and "in some instances upwards of 30 years." *Id.* at 508. Expert testimony offered in that case indicated the machine appeared to be in good operating condition without excessive wear and tear when it was later examined at a Goodyear plant in Canada. Defendants argue that the present case differs from *Hendricks* in that the defendant in *Hendricks* relied solely on the ten-year presumption, whereas in the present case defendants have offered evidence that the cultivator was substantially modified due to plaintiffs' replacement of various parts. However, plaintiffs have offered evidence that the replacement of such parts was an ingredient of the design of the cultivator.

Upon examination of the parties' arguments, including the parties' factual submissions, the court finds that plaintiffs have presented sufficient evidence to rebut the statutory presumption, and to create an issue triable to a jury regarding whether the useful safe life of the cultivator had expired. Plaintiff has presented evidence tending to show that the cultivator had not been subjected to excessive wear and tear and that the cultivator appeared to be operating normally, that the cultivator had not been modified or altered in any way which affected normal use and operation, and that heavy farm machinery of this type was generally expected to, and did, last for a period in excess of ten years.[4]

## V. Defendants' Motion for Leave to Amend

■ In their motions to amend, defendants move the court for leave to amend their answers to plead as an affirmative defense K.S.A. 60–513(b), the Kansas general ten-year statute of repose.[5] Plaintiffs oppose

---

**3.** In connection with plaintiffs' response to their summary judgment motion, defendants filed a motion to strike certain paragraphs contained in the plaintiffs' statement of undisputed facts. These statements deal with previous accidents involving the cultivator and alleged dangerous features of the cultivator of which Ryan Patton claimed to be unaware. Because the court has not relied on any of these facts in denying defen-

dants' motions for summary judgment, defendants' motion to strike is denied as moot.

**4.** As a result, we decline to address whether or not certain exceptions relied upon by plaintiffs might be applicable.

**5.** K.S.A. 60–513(b) provides as follows:

Except as provided in subsection (c), the causes of action listed in subsection (a) shall

the motions claiming that they are not timely made, that allowing the defense to be pled would be prejudicial to them, and that the amendment would be futile.

In order to understand the circumstances of defendants' motion, a brief review of the procedural history of this case is necessary. On April 13, 1992, defendant Hutchinson Wil–Rich ("HWR") filed its motion for partial summary judgment on plaintiffs' claim that defendants had post sale duties of warning, retrofit and recall. On April 20, 1992 HWR filed its answer to plaintiffs' amended complaint. This answer pled the "useful safe life" statute of repose found in K.S.A. 60–3303. K.S.A. 60–513(b) was not pled. On May 15, 1992, the Lear Siegler defendants filed their answer to the amended complaint which also pled K.S.A. 60–3303 but not K.S.A. 60–513(b). The deadline for filing amended pleadings as set by the scheduling order was July 15, 1992. None of the defendants sought to amend their answer to include K.S.A. 60–513(b) prior to that date. On September 14, 1992, oral argument was presented on defendants' summary judgment motion. On September 22, 1992 this court entered an order certifying questions to the Kansas Supreme Court regarding whether Kansas products liability law recognizes post sale duties of warning, retrofit and recall. The present action was stayed pending a decision by the Kansas Supreme Court on those questions.

On November 19, 1992, HWR counsel first became aware of the Supreme Court decision in *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992). Upon reviewing the *Harding* decision, in which the court discussed the interaction between K.S.A. 60–513(b) and K.S.A. 60–3303, HWR counsel for the first time recognized that it had a possible defense under K.S.A. 60–513(b). HWR fully briefed the K.S.A. 60–513(b) issue to the Kansas Supreme Court on certification. However, the Kansas Supreme Court expressly declined to consider the issue be-

cause HWR had not pled K.S.A. 60–513(b) as an affirmative defense in the federal suit and the issue had not been certified. On October 29, 1993, the Kansas Supreme Court issued its ruling on the certified questions regarding post sale duties to warn, recall and retrofit, thus lifting the stay which had been in effect in this case. Defendants proceeded to file their motion for leave to amend in this court on November 30, 1993.

A party's ability to amend pleadings is governed by Fed.R.Civ.P. 15(a). The United States Supreme Court has set forth the factors for this court to consider in granting leave to amend pursuant to Rule 15(a).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Seacat v. Mesa Petroleum Co.*, 561 F.Supp. 98, 105 (D.Kan.1983) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

In *Speer v. Wheelabrator Corp.*, 826 F.Supp. 1264 (D.Kan.1993), this court thoroughly analyzed the relationship between K.S.A. 60–513(b) and K.S.A. 60–3303(b). *Speer* involved a survival and wrongful death action brought by the estate of Cindy Melissa Collins and her heirs. Ms. Collins died as the result of being struck by the bucket of a Wheelabrator Tumblast machine that she was operating. The defendants were the manufacturer of the machine and the manufacturer of the operator button used in the machine.

In *Speer*, defendants contended that all plaintiffs' claims were barred by the ten-year statute of repose set forth in K.S.A. 60–513(b). It was uncontroverted that the Tum-

---

not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury

becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

blast machine was delivered to Ms. Collins' employer more than ten years before plaintiffs filed their action. Defendants argued that because more than ten years elapsed from the time defendants delivered the machine, plaintiffs' claims were barred by K.S.A. 60–513(b). Plaintiffs contended that the ten year statute of repose contained in K.S.A. 60–513(b), a general limitation period, did not apply to their causes of action, rather the applicable statute was K.S.A. 60–3303(b)(1), which allows actions to be brought more than ten years after delivery of a product provided the plaintiff can show by clear and convincing evidence that the product has a useful safe life greater than ten years.

In deciding *Speer*, in order to better understand the interplay between K.S.A. 60–513(b) and K.S.A. 60–3303, this court spent many hours reviewing the pertinent statutes, recent amendments thereto, and opinions of the Supreme Court of Kansas construing those statutes. Following this review, we concluded that the provisions of K.S.A. 60–3303(b) and K.S.A. 60–3303(c),[6] which specifically speaks to the applicability of K.S.A. 60–513(b) to cases governed by the Kansas Products Liability Act, inherently conflict, and it is not possible to read the two statutory provisions in a logical manner that gives full effect to both provisions. Although troubled by the apparent impossibility of harmonizing the conflicting language of subsections (b) and (c) of K.S.A. 60–3303, from our review of pertinent Kansas authorities, particularly the decision in *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992), this court concluded in *Speer* that the Kansas Supreme Court would hold that the ten-year repose provision of K.S.A. 60–513(b) was not applicable to products liability claims.[7]

Defendants make two different arguments as to why our holding in *Speer* was incorrect. Defendants first assert that for reasons not considered by this court in *Speer*, the ten year provision of K.S.A. 60–513(b) can logically co-exist with the ten year provision in K.S.A. 60–3303(a) and (b), and thus our conclusion in *Speer* that K.S.A. 60–3303(b) would be meaningless if K.S.A. 60–513(b) applied in a products liability case was erroneous. Defendants contend that while the ten-year periods found in K.S.A. 60–513(b) and K.S.A. 60–3303 are the same as to duration, they are triggered by different events. Defendants assert that K.S.A. 60–513(b) is defendant-specific, whereas K.S.A. 60–3303 is product-specific. Defendants argue that as to K.S.A. 60–513(b), the triggering event is the "act giving rise to the cause of action," which defendants contend in the present case would be the sale of the cultivator by the manufacturer to a dealer. Defendants then contend that totally different triggering language is found in K.S.A. 60–3303, where the ten years is measured from the "time of delivery," which is defined to mean "the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold." K.S.A. 60–3303(a)(1). Defendants contend that in the present case this triggering event would be the purchase of the cultivator by Michael Patton. Defendants contend that the only time the triggers would be the same for K.S.A. 60–3303 and K.S.A. 60–513(b) is if the manufacturer first sold its product to a consumer user. However, when a dealer is involved, the statutes would begin running on different dates, and therefore K.S.A. 60–513(b) would not render K.S.A. 60–3303(b)(1) meaningless.

Defendants present the following hypothetical in support of their argument:

> A cultivator is manufactured and sold to a dealer in November, 1980. The ten year statute of repose provided for by K.S.A. 60–513(b) begins to run, *as to the manufacturer*, from the date of that sale. Since there has not yet been a sale to a consumer user, the ten year statute of repose

---

6. K.S.A. 60–3303(c) provides as follows:

> Except as provided in subsections (d) and (e), nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60–513, and amendments thereto.

7. Our reasoning in reaching this conclusion is extensively set forth in *Speer v. Wheelabrator Corp.*, 826 F.Supp. 1264 (D.Kan.1993). The Kansas Court of Appeals reached the same conclusion in *Baumann v. Excel Industries, Inc.*, 17 Kan.App.2d 807, 845 P.2d 65 (1993).

provided by K.S.A. 60–3303 has not yet begun to run. In January, 1981, the dealer sells the cultivator to a farmer, the first consumer. Now the ten year statute provided in K.S.A. 60–3303 begins to run as to a suit against all possible defendants. As to the dealer the ten year statute in K.S.A. 60–513(b) begins to run on the same date, the date of the dealer sale to the farmer. In December, 1990, the farmer is injured using the cultivator due to a latent defect in the cultivator. He sues both the manufacturer and the dealer. His suit against the manufacturer is barred by K.S.A. 60–513(b). However, his suit is not barred as to the dealer because less than ten years have elapsed since the sale by the dealer. Similarly, the suit is not barred as to the dealer by K.S.A. 60–3303 because less than ten years have elapsed since the sale to the farmer, the first consumer. Therefore, the farmer's suit against the dealer may proceed but the suit against the manufacturer is time barred by K.S.A. 60–513(b).

The court has carefully considered defendants' argument that the two statutes can logically co-exist, along with their hypothetical, and finds that defendants' argument wilts under careful scrutiny for at least three separate reasons. First, if the statutes were to be interpreted as defendants suggest, as to manufacturers the ten year period contained in K.S.A. 60–513(b) would always be triggered prior to the triggering of the ten year useful safe life presumption period of K.S.A. 60–3303(b)(1), with the result that the rebuttable presumption of a ten year safe life contained in K.S.A. 60–3303(b)(1) would never apply to a manufacturer because any suit against the manufacturer would already be barred by K.S.A. 60–513(b). Such an interpretation conflicts with the legislature's intent that manufacturers be subject to the ten-year useful safe life period of repose, which is evidenced by the inclusion of manufacturers in the definition of a product seller under K.S.A. 60–3302(a) and (b). Second, defendants' interpretation would give greater protection to product manufacturers than to dealers. There is no reason to conclude from the plain language of the statute that the legislature intended such a result and such an interpretation would be directly at odds with the legislature's intent otherwise expressed in K.S.A. 60–3306, which protects dealers from liability for selling a defective product if the dealer could not have discovered the defect while exercising reasonable care, while specifically providing that a manufacturer would be liable in such an instance. Third, and most importantly, even if the statutes are applied as defendants suggest, K.S.A. 60–513(b) would still render K.S.A. 60–3303(b)(1) meaningless. Under defendants' proposed interpretation, K.S.A. 60–3303(b)(1) would never apply to a manufacturer because the ability to bring an action would always be barred by K.S.A. 60–513(b). Further, if, as defendants propose, K.S.A. 60–513(b) is triggered as to the dealer by the dealer's sale to an ultimate consumer, the ten year repose period of K.S.A. 60–513(b) will expire as to the dealer before the rebuttable presumption of K.S.A. 60–3303(b)(1) would come into effect. Thus, even under defendants' interpretation, applying K.S.A. 60–513(b) to a products liability action renders K.S.A. 60–3303(b) meaningless.

Defendants' second argument is that language used by the Kansas Supreme Court in *Nida v. American Rock Crusher Co.*, 253 Kan. 230, 855 P.2d 81 (1993) affirms that K.S.A. 60–513(b) applies in products liability cases. *Nida* involved a peculiar cause of action relating to subsidence of land. In *Nida*, plaintiffs suffered damages to their residence when the surface of their land sank approximately ten feet due to subsurface mining operations, which had ceased thirty years before the subsidence occurred. The *Nida* court reversed the trial court's determination that the plaintiffs' action, which was brought within two months of the collapse, was untimely under K.S.A. 60–513(b). In reversing the trial court's granting of summary judgment, the *Nida* court found that the "act giving rise to the cause of action," for the purposes of triggering K.S.A. 60–513(b), was the subsidence of the surface and not the mining operations by defendant. *Id.* at 239, 855 P.2d 81.

The defendants in *Nida* argued that the "act giving rise to the cause of action" must have been an act that they had undertaken, and in support of their argument cited the

cases of *Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 832 P.2d 345 (1992), *Admire Bank & Trust v. City of Emporia,* 250 Kan. 688, 829 P.2d 578 (1992) and *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958 (1992). *Dobson* and *Admire Bank* are simple negligence cases. *Harding* is the products liability asbestosis case which this court relied on in *Speer.* The *Nida* court distinguished those cases on the grounds that the subsidence action was an action for trespass. The court stated that:

> Although a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not, run from an act of defendant. There is no trespass until the entry is accomplished *and* the damage occurs (or has begun to occur, as in a case of continuing trespass). The trespass counterpart of the negligence "wrongful act" is the entry and damage. In the present case, the entry was accomplished and the damage occurred when the surface fell.

*Id.* at 238–39, 855 P.2d 81.

It is language used by the *Nida* court in making this distinction that the defendants have latched onto for the proposition that K.S.A. 60–513(b) applies in product liability cases. The language is as follows:

> *Dobson, Harding* and *Admire Bank* were negligence and product liability cases. They are distinguishable from the present case in that the "act giving rise to the cause of action" was the wrongful act of negligence or manufacturing and selling a defective or harmful product. Here the "act giving rise to the cause of action" was the subsidence of the surface and not the mining operations.

*Id.* at 239, 855 P.2d 81.

This court finds no basis for interpreting the above-quoted language from *Nida* as an affirmation by the Kansas Supreme Court that K.S.A. 60–513(b) applies in products liability cases. The *Dobson, Admire Bank* and *Harding* decisions are noted by the *Nida* court merely for the distinction that in a negligence or product liability case the "act giving rise to the cause of action" for K.S.A.

60–513(b) purposes would be when the negligence occurred, even though the harmful consequence may not manifest itself until later, whereas in the subsidence action at issue in *Nida* the "act giving rise to the cause of action" required both entry *and* damage. *Harding* is discussed elsewhere in the opinion, mainly for its interpreting K.S.A. 60–513(b) as a statute of repose. The *Nida* court notes its ruling in *Harding* that plaintiff's cause of action was saved by K.S.A. 60–3303(b), which provides that the ten-year period of repose in K.S.A. 60–513(b) does not apply to claims for latent diseases caused by exposure to harmful materials. It is this ruling that we relied on in *Speer* to determine that K.S.A. 60–513(b) did not apply in products liability cases, and nothing in *Nida* indicates that the Kansas Supreme Court has in any way changed its ruling in *Harding.*

Having given thorough consideration to defendants' arguments to the contrary, the court finds that our holding in *Speer* and the holding of the Kansas Court of Appeals in *Baumann,* that K.S.A. 60–3303(b) controls over K.S.A. 60–513(b) in a products liability action, remain authoritative and correctly decided. Accordingly, defendants' motions to amend their answers to add K.S.A. 60–513(b) as an affirmative defense are denied on the basis of futility.[8]

## VI.  Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendants' motions for summary judgment (Docs. # 165 and 167) are denied.

**IT IS FURTHER ORDERED THAT** defendants' motions for leave to amend their complaints (Docs. # 162 and 163) are denied.

**IT IS FURTHER ORDERED THAT** defendant Hutchinson Wil–Rich's motion to strike (Doc. # 178) is denied.

**IT IS SO ORDERED.**

---

**8.**  As a result, we decline to address the issue of   the timeliness of the defendants' motions.